**TEAM et al. v. TEXAS & P. RY. CO.**

No. 14809.

Court of Civil Appeals of Texas.
Fort Worth.
Jan. 3, 1947.

Rehearing Denied Feb. 7, 1947.

Holloway, Hudson & Shirley and Luther Hudson, all of Fort Worth, for appellants.

Samuels, Brown, Herman & Scott and Jesse M. Brown, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

Appellee was charged with negligently setting fire to grass in appellants' pasture. Appellants' pasture was north of the railroad, being separated from it only by a

county road about 100 feet wide. On the day of the fire a strong wind was blowing from the south. It was early in the fall of the year, and the weather had been very dry for some time. There was no witness who actually saw any fire escape from the locomotive and set fire to the grass, so resort necessarily was had to circumstantial evidence to prove both the cause of the fire and the alleged negligence of the railway company. One witness testified that he was plowing in a field when the train passed. He did not see any fire before the train passed, but immediately after the train passed and while it was still within view of the witness he saw smoke issuing from appellants' pasture. For many years appellee had used only oil burning locomotives.

Appellants charged appellee with negligence in not having its locomotive equipped with a spark arrester and with a baffle plate, and also charged that appellee's train operatives were negligent in sanding the flues of the engine as it passed the pasture. The jury returned negative answers to the three issues which inquired whether appellee was negligent in the three respects mentioned. Judgment was rendered on the verdict that appellants take nothing by their suit. The only complaint made on appeal is that the trial court erroneously excluded certain testimony.

The first point of error relates to the exclusion of a portion of the testimony of the witnesses Stallard and Rawls. Stallard was appellee's section foreman in charge of the section of the railroad near appellants' pasture. Rawls was a conductor in the employ of appellee. He was not on the train which allegedly set fire to the pasture, but was on another train which came to the scene of the fire soon after it started. The testimony of both of these witnesses was in the form of oral depositions taken before the trial. Most of the testimony contained in the two depositions was admitted in evidence. After much of Stallard's deposition had been read to the jury, the following question and answer were also read to the jury:

"Q. What is it, Mr. Stallard, that you see at night when a train is going up a hill and there is a lot of dark smoke and you see sparks up in it, on an oil-burning locomotive? A. I couldn't say. I could only guess."

The following questions and answers from the deposition were then offered out of the presence of the jury, and were excluded by the court on objection of appellee:

"Q. What would be your best judgment about it? A. I would guess that they sanded it, and possibly some of it could come out when they sand it.

"Q. That is what they call sanding the flues, isn't it? A. Yes. That is only a guess with me because I don't know.

"Q. You have on occasions I suppose —you have seen thousands and thousands of trains in your day, haven't you? A. Yes, I guess so.

"Q. Now let's just talk about the last 15 years. You have seen the trains working heavy, going up a hill, and you have seen black smoke come out and you have seen some little sparks in the smoke, haven't you? A. A few times in my life I have seen a spark or two at night. You couldn't see them in the daytime.

"Q. And that would usually be when a train was going upgrade and working pretty heavy, wouldn't it? A. Yes, I suppose it would."

The excluded questions and answers from the deposition of the witness Rawls are as follows:

"Q. But it would be your testimony that you don't have near so many sparks from an oil-burning locomotive as from coal? A. Oh, nothing to compare with the coal-burner.

"Q. All right. In other words on a coal-burner you had lots of sparks? A. Yes, the harder you worked the engine, it took them up out of the fire, I think is what they—

"Q. And the harder they worked the higher it threw them and the more sparks they would have on the coal-burners? A. Yes.

"Q. Now the oil-burners, you say there are much less sparks? A. You seldom

ever see any spark coming out of an oil-burner.

"Q. It would be just once in a while when they are working the engine real hard that you see any sparks? A. Well it would be that, or something that—probably if they were sanding out, or something that way, the hot sand would come out. But when the sparks would hit, they would go out. You would never see anything like you would on a coal-burner. On a coal-burner you could see the sparks when they hit, they would still be hot, you could distinguish. But you don't see that from an oil-burner—or I never have.

"Q. All right. You do see some brief sparking occasionally immediately out of the smoke stack on an oil-burner, don't you? A. Yes, sometimes."

The second point of error relates to certain testimony offered by the witness Gray, who testified in person at the trial. The substance of the excluded testimony was that Gray lived west of the burned pasture; that he thought he had seen locomotives on appellee's road throw out sparks on more than one occasion; that about two years before the date of the fire here involved Gray was standing beside the chicken yard on his place, and saw one of appellee's trains go by; that the wind was blowing from the railroad toward witness' place; that he saw fire start up about the time he was watching the train pass; that witness saw nothing that could have started the fire; that the fire started about 200 feet from the track; that a county road ran by witness' place, and that the fire started about 30 feet from the county road; that witness did not see anything come from the train engine, knew nothing about the condition of the engine, and did not know what kind of fuel the engine was burning.

■ It is clear from the decisions that both the origin of the fire and the negligence of the railroad company in allowing the escape of fire from its engines may be shown by circumstantial evidence; and we think it fairly certain that the evidence introduced in this case would have supported a verdict for the appellants. 19 Tex.Jur., pp. 675-677; Gulf, C. & S. F. Ry. Co. v. Curry, Tex.Civ.App., 135 S.W. 592; Texas & P. Ry. Co. v. Brandon, Tex.Civ.App., 183 S.W.2d 212, writ refused. But the verdict having been for the defendant, the questions which we must decide are, first, whether the excluded evidence was admissible, and second, if it was admissible, whether its exclusion was harmful.

Good statements of the rules applicable to this type of cases may be found in the chapter on Fires, in 19 Texas Jurisprudence. It is sometimes generally stated that where the engine which is charged with setting the fire is identified, proof must be limited to the construction, condition and operation of that engine, Id., p. 678, and that it may not be shown that other engines have emitted sparks or set fires. Id., p. 680. When the cases announcing these rules are examined, it will usually be found that the negligence charged was a failure to keep the spark arrester on that particular engine in repair, or something of like nature. In such a case, it is obvious that proof of emission of sparks or setting of fires by other engines would not usually have any probative value on the question of whether or not the identified engine and its spark arresting equipment were in good condition. But the reason for the rule in those cases is not present in the case before us. Here, none of appellee's oil-burning engines was equipped with spark arresting equipment. It is apparent from the record that the contentions made by appellee by pleading and proof were that oil-burning engines would not emit sparks, that it was not negligence to fail to equip them with spark arresting equipment, that spark arresting equipment would hamper the efficient operation of oil-burning engines, and that the oil-burning engine in question could not have set the fire. Appellee maintained in the trial court, judging from the remarks made to the court in objecting to the testimony which was excluded, and maintains here, that all of its proof was limited to the equipment, condition and operation of the identified locomotive which was charged with setting the fire, but when we examine the testimony of its witnesses it is clear that the defense offered to the jury by appellee's witnesses was not only that

this particular engine was in good condition, but also that it was unnecessary and impracticable to equip oil-burning engines with spark arresting devices, and that appellee followed the practices which were followed by other railroads in this respect.

■ As has been pointed out, appellants were put to the necessity of proving their case by circumstantial evidence. As is said in Moose v. Missouri, K. & T. Ry. Co., Tex.Com.App., 212 S.W. 645, considerable latitude must be allowed in the introduction of testimony and in the drawing of inferences as to the origin of the fire.

■ "An issue as to the existence or occurrence of a particular fact, condition, or event may be proved by evidence as to the existence or occurrence of similar facts, conditions, or events, under the same, or substantially similar, circumstances." 32 C.J.S., Evidence, § 584, p. 438.

■ The inquiry here was not the same as that in the cases of coal-burning engines, where all were equipped with spark arresting devices and where it was charged that the devices on an identified engine were out of repair. Here the jury were called on to determine the question of appellee's negligence vel non in operating oil-burning engines without spark arresting equipment. Relevant proof on that issue was not confined to evidence of the condition of the identified engine, but included evidence of what other oil-burning engines, and particularly other oil-burning engines operated by appellee, would do. The rule stated in 22 Am.Jur., p. 651, is applicable to the situation presented here: " * * * where it is established that the company's engines are all practically identical in their construction and operation, then it is permissible, independent of the identification of the engine which it is asserted actually set the fire, to show that other fires, not too remote in point of time, have been set by other engines of the company."

For the same reason it would be permissible to show that other engines of the company had been seen to emit sparks, subject to the qualification that the proof not be too remote.

The proof being, as we have said, that all of appellee's engines were substantially alike as to the qualities in question, we doubt if it is material whether we say, in the situation presented by this record, whether proof of emission of sparks by other engines belonging to appellee was admissible as primary or as rebuttal evidence.

A question which gives us much concern is whether the excluded testimony was too remote and indefinite as to time and place where sparks were said to have escaped from engines operated by appellee, and another difficult question is whether the excluded testimony would likely have changed the verdict of the jury if it had been admitted.

When the excluded testimony of Stallard and Rawls is boiled down, omitting the questions leading up to the material portion of the testimony, this is the substance of it. Stallard said that he had seen thousands and thousands of engines in his day; that a few times in his life he had seen a spark or two at night, but that they could not be seen in the daytime; that it would usually be when a train was going upgrade and working pretty heavy. When asked what could be seen at night when a train was going up a hill and there was a lot of dark smoke and sparks that could be seen in it, on an oil-burning locomotive, he said that he could only guess that "they had sanded it, and possibly some of it could come out when they sand it." He said that it was only a guess because he didn't know. Rawls testified that the sparks from an oil-burning locomotive were nothing to compare with those coming from a coal-burning engine; that "you seldom see any sparks coming out of an oil-burner," that it would be just once in a while—probably if they were sanding the flues the hot sand would come out, but when the sparks hit they would go out. "On a coal-burner you could see the sparks when they hit, they would still be hot, you could distinguish. But you don't see that from an oil-burner,—or I never have." Sometimes "you do see brief sparking occasionally immediately out of the smoke stack on an oil-burner."

In another portion of his deposition, which was admitted and read to the jury,

Rawls testified that sometimes, when the flues were being sanded, sparks could be seen at night, something "white and hot, it looks like, coming out of the smoke stack." The witness Sandidge, one of appellee's locomotive firemen, when questioned about the sanding of the flues, testified that he had occasionally seen sparks up in the smoke, that "sometimes you will have some sparks in the smoke when you are working hard going up a hill." McDermott, appellee's master mechanic, said it was possible that if the sand used in sanding the flues were red hot, or white hot, it would show against dark smoke, or at night, and that he had no way of knowing how hot the sand might be as it came out of the smoke stack. McMurry, the assistant master mechanic, was asked if there was anything that could be done to the type of engine in question to make it put out sparks, and answered, "Well, not unless when you sand them out and the soot comes out, the soot and sand." He said that was the only thing he could think of that would cause sparks.

■ It is difficult for us to see that there was any reversible error on the part of the trial court in excluding the rather vague and indefinite testimony of Stallard and Rawls.

Had there been more frequent occasions, better identified as to time and place, when they had seen sparks coming from appellee's locomotives, there would be more reason to say that the excluded evidence had some probative value. All we can tell from the excluded evidence is that on a very limited number of occasions, the time and place not being shown, each of these witnesses had seen some kind of sparks issuing from oil-burning locomotives belonging to appellee. The witness Rawls had said much the same thing in another part of his testimony which was admitted in evidence, and at least three other of appellee's employees gave testimony as forceful as that which was excluded. It could not be said that refusal to permit Rawls to testify again to a matter he had already testified about would be reversible error, and there is so little of substance in the excluded portion of Stallard's testimony that we cannot seriously believe that its admission would have altered the outcome of the trial.

■ We think that there was no error in excluding the testimony of the witness Gray. His testimony might support an inference that the train set the fire which he saw some two years before, but if we infer that the present fire was started by the train because of an inference that another train started the fire which Gray saw, we shall be resorting to the condemned practice of piling inference upon inference in reaching the ultimate finding of fact.

"Inferences can never be made to subserve the primary function of evidence, and no inference of fact should be drawn from an uncertain premise. The fact or facts relied on to support a presumption or inference must be proved by direct evidence the same as if they were in issue. A presumption of fact cannot rest upon a fact presumed, or, in other words, one presumption cannot be based upon another presumption, nor an inference of fact upon other inferences." 17 Tex. Jur., p. 247.

■ Even if we grant that the trial court might properly have admitted the items of testimony which were excluded, we are unable to believe that the exclusion of it was such an error as was calculated to cause and probably did cause the rendition of an improper judgment in the case. Texas Rules of Civil Procedure, rule 434.

The judgment of the trial court is affirmed.

HALL, J., *not sitting.*