**FISHER CONSTRUCTION COMPANY**
et al., Appellants,

v.

Robert E. RIGGS et al., Appellees.

No. 13334.

Court of Civil Appeals of Texas.

Houston.

Jan. 8, 1959.

Rehearing Denied Jan. 29, 1959.

Dyess, Dyess & Prewett, Arthur D. Dyess, Jr., Houston, for appellant B. B. Bettell & Son, Inc.

McGregor, Sewell & Junell, William L. Bowers, Jr., Houston, for appellant Fisher Const. Co.

Stanley F. Swenson, Houston, for appellee Riggs.

Carey Williams, Houston, for intervenor I. C. T. Ins. Co.

WERLEIN, Justice.

Appellee, Robert E. Riggs, brought this suit for personal injuries sustained by him on August 15, 1955, when he hopped or jumped through a plate-glass window in an unfinished store space, a part of the Palm Center Shopping Center in the City of Houston, then in the process of construction. Appellant Fisher Construction Company, hereinafter referred to as Fisher, was the general contractor for the shopping center project consisting of some 42 stores covering approximately 6 acres of buildings. Appellant, B. B. Bettell and Son, Inc., hereinafter referred to as Bettell, was the painting contractor on the project, and appellee was a painter in the employ of Bettell. I. C. T. Insurance Company, carrier of workmen's compensation insurance on employees of Bettell, intervened. Fisher filed its third-party action against Bettell, basing such third-party action on an indemnity agreement entered into between them.

The court entered judgment on the verdict of the jury in favor of appellee in the sum of $20,010, out of which $4,099.45 was decreed to the intervenor. It was further ordered and decreed that Fisher recover over against Bettell judgment for the sum of $850 attorney's fees and expenses incurred, plus such sums as Fisher may ultimately be required to pay appellee.

Bettell's brief asserting 11 Points of error is adopted by Fisher with the exception of Points 10 and 11 relating to the indemnity agreement in answer to which Fisher has filed a separate brief.

We shall first consider appellee's motion to dismiss this appeal or to require new cost and supersedeas bonds with two sureties. The supersedeas bond was executed by Bettell as principal and Fidelity & Deposit Company of Maryland as surety. The cost bond was executed by Fisher as principal and the Employers' Liability Assurance Corporation, Ltd., as surety.

Articles 7.01 and 7.02 of the Insurance Code of Texas, permitting private corporations to act as surety and requiring only one corporate surety, were repealed by act of the 55th Legislature, effective ninety days after May 23, 1957. In repealing such articles, the Legislature failed to enact any law in lieu thereof. Hence there is no statutory provision authorizing surety com-

panies to execute bonds in judicial proceedings other than in probate matters and certain proceedings not here pertinent, nor is there any statutory requirement that an appeal or supersedeas bond be executed by two sureties.

Appellants assert that appellee's motion to dismiss was not timely filed, under Rule 404, Texas Rules of Civil Procedure, since it was not filed within thirty days after filing of the transcript in this Court. We are of the opinion that appellee has waived the right to object to the sufficiency of the appeal bond, but agree with the decision in Berry v. Curtis, 154 Tex.Civ.R. 579, 227 S.W.2d 396, no writ history, holding that Rule 404 does not apply to a supersedeas bond in view of the language of Rules 364 to 368. In any event, Rule 365 gives this Court the authority to review such bond and to require an additional bond upon a proper showing of insufficiency. See also Rule 430, T.R.C.P.

Rule 354, T.R.C.P., covering cost bonds on appeal, provides that the appellant "shall execute a bond to be approved by the clerk." This rule also provides, "Each surety on the bond shall give his post-office address." Appellee asserts that this last sentence implies the necessity for more than one surety on the bond. Rule 354 does not so state, nor does the sentence quoted so imply. Whether there is one surety or more, each surety must give his postoffice address.

Rule 364, T.R.C.P., relative to supersedeas bonds, provides only for "a good and sufficient bond to be approved by the clerk," and does not specify the number of sureties.

The Supreme Court, in Ex parte Wrather, 139 Tex. 47, 161 S.W.2d 774, 775, in which one of two personal sureties was financially able to pay the amount of the bond in the event of default, stated:

"Rule 364 merely prescribes that an appellant must give 'a good and sufficient bond to be approved by the clerk.'

Therefore, if one of the bondsmen was actually sufficient surety, and the clerk was willing to accept the bond, this made a 'good and sufficient bond,' and met the requirements of the rule."

For a discussion of the history of various statutes and requirements with respect to bonds, see. Universal Automobile Ins. Co. v. Culberson, Tex.Civ.App., 51 S.W.2d 1071, 1072, no writ history, in which case the court stated:

"The sole purpose of requiring an appeal or supersedeas bond must therefore necessarily be to furnish security to the appellee in addition to the personal responsibility of the appellant. Automobile Insurance Co. v. Teague (Tex.Com.App.), 32 S.W.(2d) 824. We therefore conclude that the 'good and sufficient' supersedeas bond required by said article 2270 is one signed by a solvent surety or sureties approved by the clerk."

Rule 364 supersedes Article 2270.

See also Pinkston v. Victoria Bank & Trust Company, Tex.Civ.App., 210 S.W.2d 612, 613, no writ history, where the court said:

"When a district clerk is called upon to approve a bond as to its financial sufficiency he performs more than a ministerial duty, he is called upon to exercise discretion, his act becomes a quasi judicial one and his decision is conclusive in an administrative sense. Baker v. Denniston-Boykin Co., 245 Ala. 407, 17 So.2d 148."

Appellee does not contend that the sureties on the bonds in question are not authorized to write bonds and do business in this State or that they are not thoroughly solvent. Each of the bonds appears to have been executed by the attorney-in-fact, respectively, of each surety. We are of the opinion that the bonds are sufficient and that it is not necessary for either bond to have been executed by more than one surety. Appellee's motion is overruled.

Appellants' first two Points are that the trial court erred in overruling appellants' motion for an instructed verdict on the ground that appellee occupied the status of licensee on the premises at the time and place he received his injury, and that under the undisputed evidence there was no breach of any legal duty on the part of appellants with respect to appellee.

Appellee had been working on the Palm Center Shopping Center as a painter for Bettell approximately 10 days before the date of his injury. His first work had been spraying, and then on Saturday preceding the Monday when he was injured he had handled rollers and brushes in some of the stores where he had been painting. On the morning of the accident appellee had painted four or five rear doors to store spaces, having been assigned to such job. He testified that in painting the back door of the store space to be occupied by Napko, he observed that it had been painted on the inside also, and he therefore started through the building to see his foreman to find out whether he should paint the inside of the back doors of the other stores. He noticed the foreman passing in front of such store space. Failing to attract his attention, he undertook to overtake him. At such time appellee was about 20 or 30 feet from the front of the store space which was 40 feet in depth. He had paint on his hands and his clothes and for that reason undertook to step through what he thought was an open space to his right of the door, rather than use the door and get paint on it. He testified that he just sort of ran or walked fast and jumped over the bulkhead which was about one foot high. He never saw the plate-glass before he hit it and did not know it had been installed. There is no evidence indicating that the accident would have been avoided had appellee approached the glass more slowly.

At such time a painter was painting inside the store space. Decorative wallpaper had already been hung but appellee testified he did not notice it. He was in a hurry to catch his foreman and get instructions as to his work. There were between 9 and 17 glaziers still working on the project and at least 12 painters. Some time prior to the accident, plate-glass had been installed in the front window of the Napko Paint Store space. When installed it was marked with large pieces of paper taped on with masking tape. Prior to the accident Fisher directed that such markings be removed and the plate-glass cleaned. Mr. Fisher, part owner of Fisher Construction Company, testified that the opening of the Center was to be on September 1, 1955, and that a great deal of work remained to be done. He further testified that construction workers frequently use the openings where plate-glass windows are to be installed as an opening to pass through, and that one of the purposes of having tape and stickers on plate-glass is that it makes the glass easier to see so that it won't be broken by workmen carrying objects. At the time of the accident the plate-glass was unguarded, unmarked, highly polished and spotlessly clean.

Mr. Fisher testified that he was sure the tenants were "pushing us to get out of their way so they could complete their work in time for the opening." That morning the painting foreman had given his men a pep talk. He testified that if any of his men had questions concerning the work he would want them to hurry up and find out what it was they needed to have answered. Appellants' Exhibit No. 1, taken on August 26, 1955, indicates that 11 days after the accident there was still painting going on in front of the Napko store space.

The testimony was undisputed that it was common practice for construction workers to use window openings as a means of ingress and egress to and from buildings in the course of construction. Appellee had used such openings at the Palm Center project before his injury.

Ralph V. Barr, an experienced glazier, testified that he always marked newly installed windows for the purpose of keeping people from walking through them or

throwing anything through them. Jesse Feagin, painting contractor, when asked why they put the tags or markings on the windows, testified, "The only thing I could see was to keep someone from running through it."

Appellee testified that in his experience he had never worked on a job where the plate-glass panels were completely cleaned up before other workmen had finished their jobs. McDaniels, a painter of 20 years' experience, stated that it was not customary for plate-glass windows to be cleaned up before painters have completed their work. Albert Atchison, a painter for 45 years, testified that it was not customary for windows on jobs such as those in question to be cleaned up and have markings removed before the painters leave the job. Painting contractor Jesse Feagin testified that in shopping center work window cleaners are the last craft on the job. It is undisputed that there were no guard rails, signs, posters, or warnings of any kind indicating the presence of plate-glass in the windows.

We do not agree with appellants' contention that since appellee had been assigned to paint the back doors of store spaces he had no business inside the store space to be occupied by Napko Paint Company. The fact that he was assigned to paint back doors or the outside of back doors would not tie him down to just that particular spot and prevent him from entering a store space, the back door of which he was painting, and through which he was taking a short cut to contact his foreman, and especially at a time when painting was going on in such unfinished store space and a painter and, according to some testimony, also a painter foreman, were therein. We think that appellee was a business invitee and not a mere licensee at the time of his injury.

Unquestionably a person may be an invitee as to certain parts of the premises but not as to others. See Burton Construction & Shipbuilding Co. v. Broussard, 154 Tex. 50, 273 S.W.2d 598. In that case, as also in the cases of Jameyson v. Farmers Gin Cooperative Association, Tex.Civ.App., 278 S.W.2d 169, no writ history; Cowart v. Meeks, 131 Tex. 36, 111 S.W.2d 1105; Texas Pacific Coal & Oil Co. v. Bridges, Tex.Civ.App., 110 S.W.2d 1248, writ dism.; and other cases cited by appellants, the injured party had gone or wandered to a part of the premises to which his invitation did not in any way expressly or impliedly extend. The cases relied upon by appellants are distinguishable from the present case in that in such cases the defendant could not reasonably have anticipated, in the exercise of ordinary care, that the injured party would have gone on the premises at the place where the injury occurred or used the premises for the purpose used at the time of injury. The case of McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391, relied upon by appellants, is also clearly distinguishable in that in such case the plaintiff testified to his knowledge of the slick condition of the floor upon which he was working and fully appreciated the danger of working on such floor as he was doing.

In the present case, Fisher might reasonably have anticipated, in the exercise of ordinary care, that appellee or some workman similarly situated would pass through the vacant store space on business of his employer, and that in doing so he might undertake to use what appeared to be an open window space or panel for egress, as was customarily done. It was not necessary that appellant should have anticipated the exact nature of appellee's injury or the precise manner of its infliction. It is sufficient that it might reasonably have anticipated consequences or an injury of the general nature of that which ensued. Texaco Country Club v. Wade, Tex.Civ.App., 163 S.W.2d 219, no writ history; Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, and authorities cited.

It is well settled that the duty owed by a general contractor, such as Fisher, to the employee of a subcontractor is similar to the duty owed by a landowner to business

guests or invitees. The standard by which this duty is measured is that of reasonable care. McKee General Contractor v. Patterson, supra; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853. The line of demarcation between a business invitee and a licensee is sometimes difficult to draw. In the instant case we think that appellee did not exceed the scope of his implied invitation in undertaking to go through the unfinished store space still in process of construction under the existing circumstances. If we assume, however, that he became a licensee upon entering the vacant store space, Fisher was under a duty not to injure him by its active negligence. Houston Belt & Terminal Ry. Co. v. O'Leary, Tex.Civ.App., 136 S.W. 601, writ denied. Moreover, the duty devolves upon an owner to exercise reasonable care to safeguard a licensee from a new or hidden danger or peril that might exist or result from a changed condition. Texas-Louisiana Power Company v. Webster, 127 Tex. 126, 91 S.W.2d 302.

In the present case, Fisher knew that it was usual and customary for windows to be taped and marked when installed in order to make them easier to see, and also knew that it was customary and usual for workmen to use the open spaces where such windows were to be installed for ingress and egress. Notwithstanding such knowledge, Fisher authorized and directed the removal of the markings from the plate-glass and had it highly polished and spotlessly cleaned so that it could not be seen from inside the store space. This was done at a time when appellant knew that the work was going on and the construction was not completed, and at a time when Fisher might reasonably have anticipated that some workman, in the belief that the glass had not been placed therein, might step or hop or push some object through or against such window and be injured by shattered glass. Thus, appellant changed the existing condition from one that threatened no harm to one that became a hidden danger and a menace to workmen on the job, without taking any precautions whatever to protect such workmen against the hazard of encountering an invisible barrier of glass presenting the appearance of an open space.

With the knowledge it had, Fisher was in an entirely different position from that of appellee who was not aware that the glass had been installed and the markers removed. We think, therefore, that under these circumstances fact issues were raised and Fisher was charged with the duty of permitting the markings and stickers to remain on the glass until the other work had been completed or placing some temporary markings thereon or in front thereof or giving some other warning of the presence of the plate-glass. Appellants' First and Second Points present a close question, but we have concluded they must be overruled.

 Appellants' Third to Seventh Points, inclusive, briefed together, assert that the trial court erred in overruling appellants' motion for an instructed verdict because the conditions alleged to constitute negligence were open and obvious to appellee, and he was guilty of contributory negligence under the undisputed evidence and is precluded from recovery under the principle of volenti non fit injuria, and further because appellee failed to offer any evidence of negligence on the part of appellant constituting a proximate cause of his injuries, and the findings and answers of the jury to Special Issues Nos. 1, 3 and 11 were not supported by any evidence and the findings and answers to Special Issues Nos. 2, 4, 5, 7 and 9 were contrary to the overwhelming weight and preponderance of the evidence, and also because appellant could not have reasonably anticipated the occurrence in question.

Appellants contend that appellee knew that the window was designed for plate-glass which would rest on the masonry bulkhead approximately one foot high, and saw the framework of the glass door, although he did not see the vertical metal

strip and thought there was only one solid sheet of glass when he went through same. He did not see the decorative wallpaper in place, although he admitted that he knew such paper is not hung until the building area involved is closed in.

We think the testimony amply supports appellee's contention that he could not see the glass until he had gone through it, and that it was not an open and obvious condition. At the time there were no light reflections or sunshine that possibly would have made the plate-glass visible. The glazier who installed the glass and who went inside the store space immediately after the injury, testified that you could tell the glass that was broken and could see the edges of it, but where it was not broken you could not see it. He further testified you could not tell whether it was there or not. Appellee's foreman O'Connor, who also entered the store space shortly after the accident, testified "I could easily see how this could happen as we could not see that there was any glass in those windows, I could hardly tell there was glass in the one that Riggs went through except that there was some ragged edges around the frame. I mean that I could not tell that there was glass in them or not."

True, appellee knew that the door had been installed, but the doors and windows were not always contemporaneously installed or glazed. Had he seen the upright aluminum bar, which he testified he did not notice, he still would not have been warned that there was any glass that had been placed in the opening because the glass frequently was not installed until days after such bars were put in place. It is not difficult to see why appellee, undertaking to overtake his foreman, did not look up or notice the wallpaper that had been installed. His attention was directed to the task at hand. He would normally rely upon his experience that the last craft on the job were the window cleaners and that the windows would not be cleaned while the painting in the store space was being done.

The cases of Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374, and Fergeson v. National Bank of Commerce, Tex.Civ.App., 174 S.W.2d 1015, no writ history, relied on by appellant, involved injuries to business invitees resulting from slipping on stairs with which they were familiar, the conditions complained of being as open and obvious to them, as to the owners. Appellant also relies upon A. C. Burton Co. v. Stasny, Tex.Civ.App., 223 S.W.2d 310, writ refused. In that case the plaintiff, a customer, walked in through the grillwork doors. He saw the plate-glass window adjacent to the grillwork doors and knew that it was a window. In leaving the premises he first looked up and he saw the same doors through which he had entered, and then he dropped his head when about 20 feet from the doors and continued to walk with his head down, never looking up until he crashed through the window. In the instant case there is no evidence that appellee had ever passed through the door or had ever been in front on the outside of this particular store space where he might have seen the glass. The Stasny case and also Acme Laundry Company v. Ford, Tex.Civ.App., 284 S.W.2d 745, writ ref., n. r. e., in which latter case a customer went into a laundry and in walking out stepped through a glass panel which he thought was a doorway, are clearly distinguishable from the present case. In each of those cases the injured party knew of the presence of the plate-glass into which he walked, and the defendant was an established, open and operating business. In Marshall v. San Jacinto Building, Inc., Tex.Civ.App., 67 S.W.2d 372, writ ref., the plaintiff tripped over a cement slab approximately ¾ inch in elevation. Plaintiff had been in the same building, and had entered at the same entrance on many occasions, and the slab was open and obvious. In the instant case the plate-glass, under the lighting and atmospheric conditions there existing with no sunshine or light reflections, was not visible and hence not an open and obvious condition.

We do not think that the doctrine of volenti non fit injuria has any application in the instant case. There is nothing to show that appellee ever noticed or that he could possibly have seen the window glass through which he jumped or hopped. In Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60, 64, our Supreme Court through Justice Calvert stated:

"A plaintiff's right to recover cannot be defeated on the theory that he assumed the risk of injury under the doctrine of volenti non fit injuria unless it appears that with full knowledge of the nature and extent of the danger involved he put himself in the way of the particular risk involved as the result of an intelligent choice. Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172."

We cannot agree with appellant that appellee was guilty of contributory negligence as a matter of law and that the findings of the jury are not supported by any evidence or that they are against the great weight and preponderance of the evidence. The fundamental principle of appellate review is that the record must be viewed in the light most favorably in support of the judgment of the trial court and the jury verdict. Whether plaintiff has exercised due care is ordinarily a question of fact for the jury. See Tidy Didy Wash v. Barnett, Tex.Civ.App., 246 S.W.2d 303, writ ref., n. r. e. This Court, in considering the sufficiency of the evidence, must disregard all evidence adverse to the findings of the jury and consider only the evidence favorable to such findings, indulging every legitimate conclusion which tends to uphold the same. Chesshir v. Nall, Tex.Civ.App., 218 S.W.2d 248, writ ref., n. r. e. See also Najera v. Great Atlantic & Pacific Tea Co., 146 Tex. 367, 207 S.W.2d 365. In Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332, 334, the court held that the failure to look for an oncoming train at the proper moment was not contributory negligence as a matter of law. The court stated:

"But the legal test is, not what the traveler could have done had he used his senses, but what an ordinarily prudent person would have done under the particular circumstances. Hence the courts have held that the failure to look and listen before going upon a railway track is not, as a matter of law, contributory negligence."

To Issues submitted, the jury found that the act of Fisher in having the markings removed from the plate-glass windows of the Napko Paint Store, when they were so removed, constituted negligence, and also that its failure to place a guard-rail or markings on or by the plate-glass windows in question after being cleaned, was negligence, and that each of such grounds of negligence was a proximate cause of the accident in question. The jury further found that appellee's act of jumping over the bulkhead rather than stepping over it was not negligence, and that he did not fail to keep such a lookout ahead in the direction he was going as would have been kept by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances, and that his failure to use the door in going out of the store was not negligence. The jury also found that the plate-glass front on the Napko store was not an open and obvious condition to one situated as was the plaintiff inside the store at the time and place in question, exercising ordinary care, and that the occurrence in question was not an unavoidable accident.

We have carefully reviewed the statement of facts and authorities, and have concluded that the court did not err in overruling appellants' amended motion for new trial and in refusing to instruct a verdict, and that the jury's findings are supported by ample evidence, and that the same are not against the great weight and preponderance of the evidence.

■ Appellants' Eighth Point presents the proposition that the court erred in admitting in evidence testimony showing or

tending to show that subsequent to the accident in question, Fisher placed paper tape markings back on the plate-glass windows, over the objection that such evidence was not admissible and was prejudicial and inflammatory.

Mr. Fisher was asked whether the windows in question could not "have been washed the following day when it was absolutely certain that all the painting was through in that building." He answered:

"If we had been building only a Napko 25-foot wide store, we might have cleaned the windows somewhat later. But since Napko was one space of a very large project, it was impossible to have sufficient manpower to perform the window washing operation at the very last minute and still be able to finish the entire work."

He also testified:

"Not from convenience or ecomomy, because we wouldn't have paid any more to wash them. But it was the physical impossibility to leave all of the window cleaning to be done on the last day."

It then devolved upon appellee to show that it would not have been physically impossible or impractical to have cleaned the windows if the cleaning and removal of the stickers or tape had been left till after the painting had been finished and the store space completed. The testimony was not introduced as an admission by Fisher that it was negligent, but in rebuttal of the testimony of Mr. Fisher. It could have been limited to such purpose. Appellants, however, did not request that the testimony be limited.

The applicable rule and exceptions thereto are set out in Vol. 2, McCormick and Ray, Texas Law of Evidence, Sec. 1151, page 42. See also St. Louis, A. & T. Ry. Co. v. Johnston, 78 Tex. 536, 15 S.W. 104; Texas-Midland Ry. Co. v. Truss, Tex.Civ. App., 186 S.W. 249, writ ref.; Houston Lighting and Power Co. v. Taber, Tex.

Civ.App., 221 S.W.2d 339, writ ref., n. r. e.; St. Louis & S. F. Ry. Co. v. George, 85 Tex. 150, 19 S.W. 1036; Fordyce v. Moore, Tex.Civ.App., 22 S.W. 235, no writ history.

In Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99, 105, the Court said:

"The rule [against admission of evidence of subsequent precautions to prove negligence] is largely one of policy and good sense to avoid discouraging safety measures, but is inapplicable where the evidence would be valid as to other issues which also exist in the case."

■ Further, it is the duty of the party objecting to the introduction of evidence which is admissible for one purpose but not for another, to request the court to limit the purpose for which it might be considered, and failing to do so, he may not be heard to complain that the jury may have considered the evidence for other purposes. 17 Tex.Jur. 361, 362, Evidence, Civil Cases, Sec. 122, and cases cited.

■ Appellants' Ninth Point of Error is to the effect that the court erred in sustaining appellee's objection to the testimony of Mr. Fisher, in substance that he could see the plate-glass in other stores from within such stores after it had been cleaned, and also erred in sustaining appellee's motion to strike such testimony because it was admissible to show appellant was not aware of any hazard existing at the time and place of appellee's injury, and also to show that prior to appellee's injury the windows in the shopping center were being washed and cleaned and that appellee in the exercise of his normal senses should have known of such fact.

Mr. Fisher testified that he did not recall being in the store in question. There is nothing to show that appellee knew anything about the windows in other stores of the project or the cleaning and polishing thereof. True, it was shown by appellants that the glass in windows of the vari-

ous stores was substantially the same size and shape and had been washed in the same manner. There is no testimony, however, as to the presence or absence of similar fixtures or painting or objects within the store or that the conditions of the store in question and other stores with respect to possible reflections and shadows and outside structures were the same or that weather conditions were substantially the same. In Panhandle & S. F. Ry. Co. v. Haywood, Tex.Civ.App., 227 S.W. 347, 351, error ref., the plaintiff sued for damages for the death of a child struck by a train. There was testimony that tests had been made by several different persons as to the distance a child might be seen on the track at the place in question. The testimony was admitted. The court stated:

"The decision of the preliminary question as to whether the conditions are so substantially similar as to authorize the introduction of the evidence is necessarily for the trial court and he has considerable latitude of discretion in deciding it."

In the instant case there are numerous facts which may have resulted in dissimilar conditions existing at the time of the accident in question and the time when Mr. Fisher made his observations of other store windows, and also dissimilar conditions with respect to the stores that might have affected visibility of the plate-glass. Under the circumstances, we do not think that the court erred in striking such testimony. See Long v. Galveston Electric Co., Tex.Civ.App., 59 S.W.2d 228, error dism.; Bonner v. Mercantile National Bank of Dallas, Tex.Civ.App., 203 S.W.2d 780, ref., n. r. e.

The case of Team v. Texas & Pacific Ry. Co., Tex.Civ.App., 199 S.W.2d 274, ref., n. r. e., is readily distinguishable in that two engines practically identical in their construction and operation are so similar that testimony concerning the operation of one would necessarily have an evidential bearing upon the operation of the other.

By its Points 10 and 11 Bettell contends that the Court erred in holding that the indemnity agreement between Fisher and Bettell requires Bettell to reimburse Fisher for all sums paid to satisfy the judgment in favor of appellee, contending that appellee's cause of action did not grow out of the work to be performed by Bettell under the sub-contract, and also that such indemnity agreement does not require Bettell to pay attorney's fees incurred by Fisher.

The applicable clause in the sub-contract is as follows:

"XVIII. Sub-Contractor shall protect, indemnify and save the Contractor harmless against any and all claims, demands and causes of action of every kind and character arising in favor of any person, including both Contractor's and Sub-Contractor's employees, on account of personal injuries or death, or damages to property occurring, growing out of, incident to, or resulting directly or indirectly from, the work to be performed by Sub-Contractor hereunder, whether such loss, damage, injury or liability arises from or is contributed to by the negligence of the Contractor or his employees, and whether due to imperfections of any material furnished by the Contractor, or the premises themselves or any equipment thereon, whether latent or patent, or for other causes whatsoever; and for damages for infringement of any patent growing out of or incident to Sub-Contractor's performance of said work or the use of material or equipment furnished by the Sub-Contractor."

We think the indemnity agreement is broad enough to include not only reimbursement of any amounts that Fisher is required to pay under the judgment, but also reasonable attorney's fees and expenses which were stipulated to be in the sum of $850. Bettell undertook to protect and indemnify

Fisher against causes of action of every kind and character growing out of, incident to, or resulting directly or indirectly from the work to be performed by such sub-contractor. Appellee's cause of action unquestionably grew out of and is incident to work that was to be performed by Bettell. At the time of the accident appellee was undertaking to obtain instructions in furtherance of Bettell's work.

This case is distinguishable from Employer's Casualty Co. v. Howard P. Foley Co., 5 Cir., 1955, 158 F.2d 363, relied upon by Bettell. In that case the indemnity clause was not as broad as in the present case and at the time of the injury the employee was doing nothing in performance of his employer's contract.

 The rule of strict construction of indemnity contracts relied upon by Bettell applies only after the intention of the parties has been determined by applying the same rules of construction as are applied to other contracts. Mitchell's, Inc. v. Friedman, Tex.Sup., 303 S.W.2d 775. Unless the indemnity agreement in question covers reasonable attorney's fees and expenses of defending the cause of action, Fisher would not be fully protected, indemnified and saved harmless. The expenses of litigating a claim indemnified against may be recovered whether the right of indemnity is implied by law or arises by implication. See Sigmond Rothschild Co. v. Moore, 166 S.W.2d 744, writ ref., w. m., in which the court quoted from 27 Amer. Jur., p. 474, the following:

"Reasonable counsel fees which have been incurred in resisting the claim indemnified against may be recovered as a part of the damages and expenses when an action is brought to recover indemnity either upon a right of indemnity implied by law or arising under a contract."

See also Price v. Steves, Tex.Civ.App., 175 S.W.2d 450, writ ref., w. m. The case of Rublee v. Stevenson, Tex.Civ.App., 161

S.W.2d 528, cited by Bettell, is clearly distinguishable.

Bettell's Points of Error are overruled and the judgment of the trial court is affirmed.