**C. E. BOYD, Sr., d/b/a Quality Gin Company, Appellant,**

**v.**

**John E. McCLESKEY and McCleskey Adams Gin, Inc., d/b/a McCleskey Gin, Appellees.**

**No. 6404.**

Court of Civil Appeals of Texas, El Paso.

Oct. 2, 1974.

**26**

Stephen L. Haley, Seminole, for appellant.

Little & Little, Jack Little, Big Spring, John L. Shepherd, Seminole, for appellees.

## OPINION

WARD, Justice.

The Appellant, C. E. Boyd, Sr., sued the Appellees as a common carrier for hire to recover the value of fifty bales of cotton which were destroyed by fire while Appellees were engaged in hauling the cotton from Seminole to Sudan, Texas. The carrier defended itself by allegations and proof that all transportation services were performed without negligence on its part, that the loss was caused by two of the excepted perils recognized at common law, to-wit: the fault of the shipper and the inherent nature of the goods being shipped. Jury findings being secured favorable as to all defensive issues, judgment was entered that the plaintiff take nothing and that the Appellees recover on their cross-action from the Appellant for the stipulated fire damages to the Appellees' float. We affirm.

The parties operate competing gin companies in Seminole. During the early part of the 1972 ginning season, an agreement was made by them that during the first part of the ginning season the Appellees would haul all of the early baled cotton of both gins to the compress at Sudan. In the late afternoon of November 6, 1972,

the Appellees' driver loaded fifty bales of the Appellant's cotton from the Appellant's yard and then drove to the Appellees' gin yard where the truck and load were left for the night. Later that night, it was discovered that the cotton on the float of the truck was on fire and the float and the fifty bales of cotton were destroyed. It was the Appellant's contention that the cotton caught fire after it was picked up by the Appellees' driver. However, the Appellees successfully maintained that one or two of the Appellant's bales were "fire packed bales," at the time they were loaded at the Appellant's gin, and that this inherent vice and the Appellant's negligence in his handling of them caused all of the loss.

■ Appellant's first and third points complain of the negative finding by the jury to the special issue inquiring if the Appellees were operating their vehicle as a common carrier. He asserts that Appellees were a common carrier as a matter of law and liable for damages on the undelivered cargo as an insurer. The position taken by the Appellant is readily conceded by the Appellees and they admit that they owed the legal duty and responsibility of a common carrier to the Appellant-shipper on the load in controversy. Having conceded the status of a common carrier, the negative finding of the jury becomes immaterial. But see Beck v. Lasater, 286 S.W.2d 957 (Tex.Civ.App.—Amarillo 1956, writ ref'd n.r.e.).

■■ It is established that the shipper of goods by common carrier makes a prima facie case of carrier liability by showing that the shipment of inanimate property was in good condition when delivered to the carrier at the place of origin and in damaged condition or destroyed in transit. The carrier cannot then exonerate itself by showing that all transportation services were performed without negligence but it must go further and establish that the loss or damage was caused solely by one of the excepted perils recognized at common law such as the fault of the shipper or the inherent nature of the goods themselves.

Missouri Pacific Railroad Company v. Elmore & Stahl, 368 S.W.2d 99 (Tex.Sup. 1963), aff'd by United States Supreme Court, 377 U.S. 134, 84 S.Ct. 1142, 12 L. Ed.2d 194 (1964); Missouri Pacific Railroad Company v. Whittenburg & Alston, 424 S.W.2d 427 (Tex.Sup.1968).

■ A "fire packed bale" of cotton is recognized as a defect or vice in the property shipped so as to qualify as a defense for the burning of a load of cotton. "Obviously, fire packed in a bale of cotton is a defect or latent infirmity of the commodity, and such loss or damage resulting therefrom is not actionable." Gulf, C. & S. F. Ry. Co. v. Downs, 70 S.W.2d 318 (Tex.Civ.App.—Dallas 1934, writ ref'd).

"No evidence" points are presented regarding the defensive issues answered favorably to the Appellees. By Special Issues Nos. 4 and 5, the Appellees affirmatively submitted and received favorable answers that the destruction of the cotton was without negligence on the part of the carrier and its destruction rendered its delivery impossible. By answers to Special Issue No. 9 and following issues, the jury found that at least one of the bales of cotton furnished by the plaintiff contained a concealed fire, which was negligence and a proximate cause of the loss. By answers to Special Issue No. 6 and following issues, the jury found that the plaintiff failed to isolate the bales of cotton preceding and following the detection of a "hot bale" at the plaintiff's gin, which was negligence and a proximate cause of the loss. In considering these points as to the legal insufficiency of the evidence and which raise the question of law, we will consider only the evidence and the inferences therefrom tending to support the findings and disregard all evidence to the contrary.

Both the plaintiff, Mr. Boyd, and the principal defendant, John E. McCleskey, were qualified ginners and testifying as experts agreed as to the probable cause of a "hot bale" around a gin and as to the necessary precautions to be adopted when a rib fire is detected in the ginning process.

They both agreed that a "hot bale" is a bale that has some burning or smoldering cotton inside of it and depending upon the size and location of the fire it might be anywhere from an hour to three days before the bale will break into an observable fire. The most probable cause of a "hot bale" is a rib fire. In the gin stands, there are rib saws which are circular saws that rotate pulling the lint away from the seed. If a wad of green cotton catches in the ribs and hangs, the saws' movement through the cotton will create enough friction through continued movement to build to the ignition point and other cotton passing by it will catch on fire and will be sent into the press and baled. There was testimony undisputed that one hundred percent of rib fires are the fault of carelessness on the part of the ginner or his helper by not catching them before the fire commences. They are supposed to watch under the stands and see that there is a continual drop of seed and if there is an area where the seed is not dropping that indicates a clogged area where a rib fire will break out. Once a rib fire starts, it will always be ultimately discovered by the ginner because it will continue to burn until somebody puts the fire out. It is possible that four or five bales may be ginned before the rib fire is located in which event there can be four or five "hot bales." A customary safety procedure has been adopted by all ginners that once a rib fire is discovered prudent ginners will hold out the bale being ginned, the bale preceding it, and the bale following it, because of the risk that the fire may not have been cleaned out of the lint flue, the condensers and all other places that are concealed between the stands and the press. The bales that are pulled out are kept separate from all other bales and watched for a period of at least seventy-two hours to be sure that they do not burn. Mr. Boyd admitted that in the event that a rib fire had been discovered on November 6th at his gin, the bale being ginned should have been isolated together with the bale or bales preceding it and the ones following it. These bales should then have been held off of the dock for at least seventy-two hours to be sure that none of the three or four bales caught on fire.

The critical dispute in the testimony occurred when the truck driver, Sam Williams, testified that when he went to pick up the cotton Mr. Boyd told him they had a fire that day and not to take one bale on the south side of the door because he suspected that it might have a fire inside of it. There was only the one bale that he was directed not to load and Williams then picked up all of the rest of the cotton that had been baled. This cotton that he picked up had been ginned on the 4th and 5th of November and some of it had been ginned on that very day. The gin had shut down for the day when Williams came by. Williams completed his loading after dark and drove to the McCleskey yard where the truck was parked for the night. There were no fires on the McCleskey premises. Testimony was offered to the effect that if a cigarette or a match had been thrown on the cotton while it was being transported that due to the high wind in the area the fire would have developed and been observed before the truck was parked for the night. The fire was not discovered until 10:30 or 11:00 o'clock that night.

Ray Garrett testified that he was one of the farmers who brought cotton in to be ginned by the Appellant on the day of the fire. As Garrett's cotton was brought into the gin, it was weighed and he was issued green cards bearing numbers which were to be attached to the bales after they came out of the press. Testifying from the numbers on the green cards, Mr. Garrett established that Bale No. 2732 was the bale which Mr. Boyd told Williams to leave isolated on the dock, as it was the one which they suspected might contain a concealed fire. As it turned out, it apparently did not have a fire as it never burned. But both the bale ginned before and the ones ginned after it and which belonged to Mr. Garrett were burned up in the fire.

 The defendants were put to the necessity of proving their case by circum-

stantial evidence and considerable latitude must be allowed in the introduction of testimony and in the drawing of inferences as to the origin of the fire. Both the origin of the fire and the negligence of the plaintiff in allowing the "fire packed bales or bale" to be loaded by Williams may be shown by circumstantial evidence. We think it certain that the evidence introduced in this case supported the verdict on both accounts for the defendants. Team v. Texas & P. Ry. Co., 199 S.W.2d 274 (Tex.Civ.App.—Fort Worth 1947, writ ref'd n.r.e.). The presence of a "fire packed bale" in the shipment was the issue to be established; thus any fact or circumstance logically related to that issue which either directly or by inference established the probability of that issue was admissible and was a matter properly accepted by the jury. Here, we have direct evidence that there had been a fire at the gin that day and that contrary to the care of the ordinary prudent person only one bale of ginned cotton was set aside as being the one suspected of being a "hot bale." The bales preceding it and the bales followng it were loaded on the truck and were destroyed in the fire. These bales should also have been set aside according to experienced ginners as they are also the ones that might contain the concealed fire. Considering this testimony and the facts and circumstances surrounding the bales after they were loaded on the float, the weather conditions that day and the time of the fire, we find that there is evidence to sustain the jury's answers to the contested issues. It follows that we are also of the opinion that there was evidence to sustain the Court's actions in submitting the issues in the first instance and in not disregarding the jury's answers thereto.

Arguments are advanced as to the factual insufficiency of the evidence to support the questioned findings. Assuming that points as to the factual insufficiency of the evidence have been properly presented to us, then, after having considered all the evidence and the reasonable in-ferences arising therefrom, such points are overruled.

Finally, points of error are presented complaining of the form of the issues submitted, particularly Special Issues Nos. 4 and 5, and urging that they contain comments upon the evidence which were pointed out to the Court by proper objections. The only reference to the Court's charge made in the motion for new trial is to the effect that "The Court further erred in not granting Plaintiff's objections to the charge, such objections having been made prior to the submission of such cause of action to the jury." Such a reference is insufficient to preserve the point on appeal. Further, the points are not briefed and they are considered as waived and are therefore overruled. Roberts v. K-Mart Foods, Inc., 470 S.W.2d 751 (Tex.Civ.App. —Dallas 1971, writ ref'd n.r.e.).

Having considered all points raised, they are all overruled.

The judgment of the trial Court is affirmed.