Joseph Giarratano, administrator of estate of Erwin A. Giarratano, deceased, appellant, v. The Weitz Company, Inc., appellee.

No. 52089.

January 10, 1967.

Fairall & Kilbride, of Marshalltown, and Lundy, Butler, Wilson & Hall, of Eldora, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellee.

Mason, J.—This is a law action to recover damages for wrongful death of an 18-year-old boy who fell 80 feet from a roof under construction at the Iowa Electric Light & Power Company near Marshalltown on June 7, 1960, and suffered fatal injuries. Plaintiff is administrator of Erwin A. Giarratano's estate.

Defendant, The Weitz Company, Inc., an Iowa corporation, was engaged as principal contractor to construct an addition to a building for the light company under a written contract between defendant and the property owner. Plaintiff's decedent was an employee of Anning-Johnson Company, a subcontractor engaged by defendant to construct and apply a poured gypsum roof for the building addition.

Plaintiff pleaded as basis for recovery a breach of contract theory in division one of his petition as amended and a tort theory in division two.

At the conclusion of the evidence the court submitted the tort theory to the jury but refused to submit the breach of contract theory.

The jury returned a verdict of $75,000 for plaintiff which the court set aside on defendant's motion for judgment notwithstanding the verdict. Plaintiff appeals.

I. The appeal presents two main questions: (1) Did the trial court err in sustaining defendant's motion and entering judgment for defendant? and (2) In the alternative, did the court err in (a) excluding certain evidence, (b) failing to submit the breach of contract theory and (c) failing to submit the no eyewitness rule?

In Division I of its motion defendant moved that the verdict and judgment in favor of plaintiff be set aside and judgment be entered in its favor and against plaintiff because the movant was entitled to have a verdict directed for it at the close of all the evidence, did move therefor and the jury did not return such verdict in favor of defendant.

Plaintiff assigns as errors relied on for reversal the sustaining of defendant's motion on the grounds (1) defendant owed no duty to and had no control over the safety of plaintiff's decedent, (2) defendant was not negligent as a matter of law, (3) any negligence of defendant was not the proximate cause of the accident, as a matter of law, (4) plaintiff failed to generate a jury question on decedent's freedom from contributory negligence, and (5) decedent had, as a matter of law, assumed the risk.

II. The court submitted as specifications of defendant's negligence (a) permitting plaintiff's decedent to work for Anning-Johnson under extremely hazardous conditions, (b) failing to provide a reasonably safe place for the work, and (c) failing to provide scaffolding and to properly and timely lay wire mesh after the asbestos board was laid.

III. Plaintiff's decedent, Erwin A. Giarratano, graduated from high school in Marshalltown June 5, 1960. Two days later he went to the light company's jobsite looking for temporary employment. Anning-Johnson, the roofing subcontractor, hired Erwin to begin work at once. He had never done work of the type he was employed to do on June 7.

We are told the process of roof construction is as follows: There are steel girders or I beams every eight feet, which are a part of the structure itself. The I beams are about six inches high and eight inches across the top and bottom. "Bulb-tees" are placed atop and perpendicular to the I beams, spaced 32 inches apart and welded. The bulb-tees are steel rails about two inches in height with a three-inch flange at the bottom. After the bulb-tees are welded, pieces of 32″ x 4′ asbestos form boards are laid between the bulb-tees so as to rest on the flange at the bottom. The form board is brittle and will not support a man's weight. Next, wire mesh and strips 3½ or 4 feet wide are rolled

over the steel and form boards. Finally, the gypsum in a slush form is pumped from the ground onto the roof and spread to a thickness of about two inches above the top of steel and wire. It hardens in 12 to 15 minutes.

The area to which Anning-Johnson was to apply a roof deck at the 80-foot level was approximately 35 feet north and south and 70 feet east and west. Before it undertook construction of the gypsum roof, the steel work was already in place and the bulb-tees were in place and welded; a temporary platform for storing materials and as a solid area to walk on after a person had climbed a stairway at the northeast corner of the structure had been installed. This platform consisted of wood planks clear across the north and extending approximately five feet south of the north edge of the roof. The planking had not been furnished by the Anning-Johnson crew. The crew had unloaded material June 6 but did not work on the roof.

The day of Erwin's death the crew began working at 7:30 a.m. For about the first hour Erwin worked on the ground, preparing the gypsum for pouring. When one of the workers on the roof decided he would rather work on the ground, Anning-Johnson's foreman asked the ground crew if any of them would go to the roof to work. Erwin said, "I will try anything once." The view to the south up to the 80-foot level was partially obstructed to persons climbing the stairs by steel grating, temporary wood flooring and equipment. When Erwin went to the roof about 9 a.m. the process of laying form boards between the bulb-tees, rolling wire over the form boards and pouring gypsum had been completed in an area about ten feet wide, just south of the wood planked area. This finished gypsum surface paralleled the wood planks from the east to west of the roof and formed a solid walking surface from east to west for 15 feet south of the north edge of the roof.

Besides Erwin these coemployees were working on the roof that morning: George Linam, the foreman, Otto Ratajesak, Harold Comisky, Phillip Berry and Richard Swenson. The superintendent, Dewey Forman, was also there part of the time. Ratajesak helped organize and supervise the work and did various jobs. At the time of the accident Comisky was laying

form boards south of the poured area. Erwin, Swenson and Berry were carrying boards from the northeast edge of the roof to him.

Plaintiff contends Erwin either slipped on a bulb-tee or tripped on wire and fell through a form board which was yet unprotected by wire or gypsum. The fall occurred about 15 feet south of the poured slab at approximately the middle of the roof. He fell from the 80-foot level onto a housing for a turbine standing 25 feet above the ground.

IV. Plaintiff's contentions as to granting the judgment notwithstanding the verdict are concerned with the duty that Weitz, the general contractor, owed to plaintiff's decedent; whether it was negligent in the performance of its duty; proximate cause; freedom from contributory negligence and assumption of risk.

Conceding that Anning-Johnson was an independent contractor and that generally one who employs this type of contractor is not liable for the latter's torts, plaintiff argues exceptions to the rule applicable here include retained control, positive responsibility, unreasonable risk and special danger in work and duty to invitee. He maintains there is substantial evidence of existence of each of these exceptions here which would permit a jury to find there was a duty owed by defendant to decedent so as to make it liable.

In considering whether defendant's motion for judgment notwithstanding the verdict should have been sustained, we view the evidence in the light most favorable to plaintiff. Davidson v. Cooney, 259 Iowa 1278, 147 N.W.2d 819.

In support of the first exception plaintiff relies on Weitz's retained control over the safety aspects of the entire job including the roof-deck as evidenced by article 12 of the written contract with the light company and defendant's actual assumption of this control.

Article 12 (exhibit 2) provided in part as follows:

"The contractor shall take *all necessary precautions for the safety of employees on the work,* and shall comply with all applicable provisions of federal, state, and municipal safety laws and building codes to prevent accidents or injury to per-

sons on, about or adjacent to the premises where the work is being performed. He shall *erect and properly maintain at all times,* as required by the conditions and progress of the work, all *necessary safeguards for the protection of workmen* and the public and shall post danger signs warning against the hazards created by such features of construction as protruding nails, hod hoists, well holes, elevator hatchways, scaffolding, window openings, stairways and falling materials, and he shall *designate a responsible member of his organization on the work, whose duty shall be the prevention of accidents.* The name and position of the person so designated shall be reported to the architect by the contractor" (emphasis supplied).

Plaintiff contends defendant thus had specific safety responsibilities in connection with the roof which necessarily included the duty to control Anning-Johnson so far as safety of the workmen was concerned; that this duty was a positive responsibility and not delegable.

In maintaining defendant assumed control in fact over safety procedures, plaintiff refers to the testimony of John Lusk, defendant's job superintendent, who described the building addition as "a hard hat job * * * which means you are not allowed in the working area without a hard hat on." He testified, "Anyone who came on the job, to my knowledge, didn't go out without a hard hat on. * * * The hard hat order that I put into effect applied to all personnel coming on the job, including Anning-Johnson personnel. * * * If I had found a situation that I thought was too dangerous I would have called their attention to it * * * Anning-Johnson's superintendent."

George Linam, labor foreman for Anning-Johnson, testified remembering "they made us wear hard hats." Comisky also testified Weitz had a safety inspector and "we were told that he would be around and to wear our hard hats at all times when we were on the job." Comisky made a written report to Weitz's safety inspector of what he saw with reference to the accident, as did the other men. Otto Ratajesak testified there was some planking on the roof-deck when Erwin was killed but it had brick and material all over it. As stated, Anning-Johnson did not furnish this planking. It was there when the crew started working on the roof.

V. Defendant contends plaintiff attempted to reach one of the prime contractors through the doctrine of respondeat superior.

Plaintiff argues the law recognizes the employer may retain a limited control—insufficient to create a master-servant relationship, yet sufficient to charge the employer with responsibility if he fails to exercise the retained control with reasonable care; the general contractor is liable for his own negligence in failing to exercise the retained control, rather than being liable under the doctrine of respondeat superior; the concept of liability for retained control, even though the control is less than needed to establish a master-servant relationship, is recognized by the cases.

Plaintiff cites Restatement, Second, Torts, section 414, which provides:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

In comment "a" under this section it is stated:

"If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others."

This section and comment "a" are set forth and approved in Trent v. Atlantic City Electric Co. (1964, 3 Cir. N. J.),

334 F.2d 847, 858, 859. See also Thill v. Modern Erecting Co., 272 Minn. 217, 136 N.W.2d 677, 684.

We agree that the general contractor may be liable for his own negligence in failing to exercise the retained control, and this liability is not under the doctrine of respondeat superior.

Plaintiff also cites in support of his position Hayes v. Philadelphia Transportation Co. (1963, 3 Cir. Pa.), 312 F.2d 522, 524; Blount Brothers Construction Co. v. Rose, 274 Ala. 429, 437, 149 So.2d 821, 830, and citations; Bittker v. Groves, 291 Mich. 40, 288 N.W. 327, 329; Spinozzi v. E. J. Lavino and Company (1957, 3 Cir. Pa.), 243 F.2d 80, 82.

In Blount Brothers, supra, the general contractor contracted with the United States to erect a building. The written contract required it to take precaution for the safety of employees and other persons. Blount Brothers subcontracted the plumbing work to Nichols Plumbing and Heating Company. Rose, an employee of the subcontractor, fell to his death from a scaffolding. The court held "* * * the provisions of appellant's contract with the government, so far as they imposed upon defendant the duty to furnish safety devices for the project, were for the benefit of Mr. Rose and his fellow workers on this project, and this action will lie so far as it arises out of the breach of this contract. Plaintiffs could sue in tort for damages arising out of the alleged breach. The contract and the law imposed the duty on appellant to provide a reasonably safe place for Mr. Rose and his fellow workers to work on this project" (citing cases).

In Spinozzi, supra, an independent contractor agreed to perform certain excavation work for the owner. Plaintiff's decedent was an employee of the contractor under its exclusive supervision and control. Death resulted from a failure to place shoring in the trench where decedent was working. There was evidence the owner's field engineer was present at the jobsite much of the time and he and the independent contractor had discussed safety the day before the accident. The court said (page 82 of 243 F.2d):

"It is the general rule that the employer of an independent contractor is not responsible for the misconduct of the con-

tractor while the latter is performing under the terms of the contract [citing cases]. * * * since the employer does not control the work being performed, he should not be liable for the harm resulting from the substandard performance of the independent contractor. Following this line of reasoning, it is apparent that where the employer has retained some element of control of the job, he should be responsible for the harmful consequences of its performance as a concomitant of the control retained. The Pennsylvania courts have recognized that the employer should be liable where he has retained control of some part of the work, or so interfered with the performance of the job as to have assumed control, and his failure to exercise that control with reasonable care causes harm to others [citing cases]. It is the jury's function to determine whether the employer retained control so as to make him liable [citing cases]."

In Bittker, supra (page 44 of 291 Mich.), the Michigan Supreme Court stated the "* * * rule has many exceptions, and this case, under the evidence, comes within the one wherein the principal, by retention or exercise, or even quasi supervision or control, remains responsible. * * * Supervision in fact exercised is equivalent to supervision expressly retained in fixing liability of the principal contractor."

VI. Plaintiff offered in evidence certain interrogatories propounded to defendant and answered by its vice-president and treasurer. Interrogatory one asked what precaution defendant had taken or caused to be taken for the safety of Erwin in connection with construction of the roof. The answer was:

"It is impossible to state in detail all of the precautions observed in the construction of the building in question for the safety of everyone who came near it. Safety was constantly emphasized. Weekly safety meetings were held. Signs were posted requiring the wearing of hard hats. Personnel in charge of and most familiar with the various aspects of the construction process were charged with the duty of recognizing and correcting conditions and observing safety precautions peculiar to their particular operations."

Plaintiff asserts defendant did not state it owed no duty to Erwin and that the foregoing answer shows the practical con-

struction placed upon the contract by the parties and that Weitz in fact assumed control over safety procedures of Anning-Johnson.

VII. In arguing his second exception, positive responsibility, plaintiff asserts defendant Weitz was charged under the written contract with a positive responsibility for the safety of the workmen and this responsibility cannot be delegated.

In Division I of its motion defendant urged it had delegated the safety responsibility in connection with the roof construction to Anning-Johnson, thereby relieving itself from responsibility. To sustain this claim defendant refers to article 37 of exhibit 2 which provides:

"Relations of contractor and subcontractor.—The contractor agrees to bind every subcontractor and every subcontractor agrees to be bound by the terms of the agreement, the general conditions, the drawings and specifications as far as applicable to his work, including the following provisions of this article, unless specifically noted to the contrary in a subcontract approved in writing as adequate by the owner or architect.

"This does not apply to minor subcontracts.

"The subcontractor agrees—

"(a) To be bound to the contractor by the terms of the agreement, general conditions, drawings and specifications and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the owner."

Defendant argues this was an express agreement between all parties to the contract that it was the duty of the subcontractor to step into the shoes of the general contractor and to assume all "obligations and responsibilities" on the subcontracted work that the general contractor had assumed towards the owner. This included the duty of the subcontractor to take all necessary precautions for the safety of employees on the work and designate a responsible member of the subcontractor's organization whose duty would be the prevention of accidents, as required by article 12 of the contract between the light company and defendant.

Plaintiff, on the other hand, contends this article requires Weitz to bind Anning-Johnson to the terms of the general con-

ditions, but in no way purports to relieve the general contractor from the responsibility taken. He contends article 36 specifically states the contractor agrees he is as fully responsible to the owner for the acts and omissions of his subcontractor as he is for the acts and omissions of persons directly employed by him. The only writing between Weitz and Anning-Johnson is exhibit "B", a part of exhibit 2, designated "purchase order" which provides:

"In connection with your work, you are to bear the same responsibility to us as we do to the architect and owner as regards to the plans and specifications."

Plaintiff contends Weitz bound Anning-Johnson to the plans and specifications but not to the general conditions.

██ ██ Where public interest or some statutory prohibition is not involved, generally contracts exempting parties from liability for their own negligence are not against public policy. Sears, Roebuck and Co., Inc., v. Poling, 248 Iowa 582, 587, 81 N.W.2d 462, 465, and citations; Weik v. Ace Rents Incorporated, 249 Iowa 510, 514, 87 N.W.2d 314, 317; Bashford v. Slater, 250 Iowa 857, 865, 96 N.W.2d 904, 909. However, "(o)ne who owes, and is personally bound to perform, an absolute and positive duty to the public or an individual cannot escape the responsibility of seeing that duty performed by delegating it to an independent contractor, and will be liable for injuries resulting from the contractor's negligence in the performance thereof, whether the duty is imposed by law or by contract * * *." 57 C. J. S., Master and Servant, section 591. In support of this statement see State Farm Mutual Automobile Ins. Co. v. Dodd, 276 Ala. 410, 162 So.2d 621, 626; Jack Cooper Transport Co. v. Griffin, Okla., 356 P.2d 748, 754, and citations; Mills v. Krauss, Fla. App., 114 So.2d 817, 819; Capitol Chevrolet Co. v. Lawrence Warehouse Co. (1955, 9 Cir. Cal.), 227 F.2d 169, 173; Elliott Consolidated School District v. Busboom, (D. C. S. D. Iowa W. D.) 227 F. Supp. 858, 862.

"In some circumstances duties may devolve upon an employer which he cannot delegate to another, and in such cases the employer is liable for breach or nonperformance of such duties even though he employs an independent contractor to do

the work." Mills v. Krauss, supra, citing 27 Am. Jur., Independent Contractors, section 48.

"Where one person owes another a contractual duty to act, the law imposes upon the person owing that duty the further duty of acting with due care in the performance of his contract so as not to injure the contractee's person or property. This duty is nondelegable. See note, Restatement, Torts, page 1101 [now "Introductory Note", topic I, following comment to section 409, Restatement, Second, Torts]. That is, the performance of the contract may be delegated to another, but this delegation does not relieve the contractor of the duty to act, or of his duty to act with due care." Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co., 201 Minn. 500, 503, 277 N.W. 226, 228.

It is our conclusion defendant assumed a duty under its contract with the light company for the safety of the workmen and this responsibility cannot be delegated even though Weitz had employed an independent contractor to do the actual work.

VIII. Plaintiff contends the two exceptions we have thus far discussed involve a duty assumed by contract, and two preliminary matters to be considered are the right to recover in tort for breach of contract and the right of plaintiff's decedent, a subcontractor's employee, to benefit from the contract between the general contractor and the owner.

It appears to be well settled in Iowa that where a contract imposes a duty upon a person, the neglect of that duty is a tort, and an action ex delicto will lie. " 'A tort may be dependent upon, or independent of, contract. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded on contract; so that an action ex contractu for the breach of the contract, or an action ex delicto for the breach of the duty, may be brought at the option of the plaintiff.' " Matthys v. Donelson, 179 Iowa 1111, 1116, 160 N.W. 944, 946; Kunzman v. Cherokee Silo Co., 253 Iowa 885, 891, 114 N.W.2d 534, 537, 95 A. L. R.2d 673.

Since the tort sued upon is the neglect of a duty undertaken in a contract to which plaintiff's decedent is not a party, it is necessary in order for plaintiff to acquire any rights

to show his decedent was a donee or creditor beneficiary of the contract. Both donee and creditor beneficiaries can maintain actions. Iowa Home Mutual Cas. Co. v. Farmers Mutual Hail Ins. Co., 247 Iowa 183, 187, 73 N.W.2d 22, 24, 25, and citations; Reeves v. Better Taste Popcorn Co., 246 Iowa 508, 516, 517, 66 N.W.2d 853, 858, and citations; In re Estate of Lindsey, 254 Iowa 699, 710, 118 N.W.2d 598, 604, 605. For definitions of creditor, donee and incidental beneficiaries, see Iowa Power and Light Company v. Abild Construction Co., 259 Iowa 314, 329, 330, 144 N.W.2d 303, 312; Olney v. Hutt, 251 Iowa 1379, 1386, 105 N.W.2d 515, 519, 520.

▮ Neither consideration from the beneficiary nor knowledge of the contract by the beneficiary is required. Olney v. Hutt, supra, 251 Iowa, at 1384, 105 N.W.2d, at 518. Nor is it necessary that the third party be identified or identifiable when the contract is made. Iowa Home Mutual Cas. Co. v. Farmers Mutual Hail Ins. Co., supra, 247 Iowa, at 187, 73 N.W.2d, at 25.

▮ The decedent though not a party to the contract was nevertheless a member of a class for whose benefit the contract was made. In re Disinterment of Tow, 243 Iowa 695, 698, 53 N.W.2d 283, 285; Blount Brothers Construction Co. v. Rose, supra.

"A distinction should be drawn between an intent to create a 'right' in a third party and an intent that a performance beneficial to him shall be rendered." 4 Corbin on Contracts, section 777.

We do not agree with defendant's contention that the doctrine of third-party beneficiaries does not apply and we hold that decedent's representative can maintain an action for the negligent failure to perform a duty assumed by contract.

▮ IX. Plaintiff contends another exception to the general rule of nonliability for acts of an independent contractor applies where the work is likely to create a particular risk of physical harm unless special precautions are taken or where the work involves a special danger inherent in it.

He cites three sections of Restatement, Second, Torts, as bearing on this exception. While the sections overlap, we set them out.

"§413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor.

"One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

"(a) fails to provide in the contract that the contractor shall take such precautions, or

"(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

"§416. Work Dangerous in Absence of Special Precautions.

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

"§427. Negligence as to Danger Inherent in the Work.

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger." See comments "b" and "c" to this section.

Comment "e" to section 413 states:

"The fact that the contract under which the work is done provides that the contractor shall take the necessary special precautions does not necessarily relieve the employer from liability, since he may be liable under the rule stated in section 416."

Comment "c" under section 416 provides in part:

"This section deals with the liability of one who employs a

contractor to do such work, even though he stipulates in his contract or in a contract with another independent contractor that the precautions shall be taken, for bodily harm caused by the negligent failure of either contractor to take such precautions. In such case the contractor who is employed to take the precautions is under a duty to indemnify his employer for any liability which the contractor's negligence in failure to take reasonably adequate precautions may bring upon him. *However, the fact that the contract contains express stipulations for the taking of adequate precautions and that the contractor agrees to assume all liability for harm caused by his failure to do so, does not relieve his employer from the liability stated in this Section*" (emphasis supplied).

Sections 413 and 416 should be construed together though the risks described in these two sections are worded differently. ("A peculiar unreasonable risk of physical harm to others" as opposed to "peculiar risk of physical harm to others".) A change in section 416 should also be noted. The old rule said the work must be such as *"necessarily* requiring * * * a peculiar risk of bodily harm to others unless special precautions are taken," whereas the new rule only requires the work be such as *"likely* to create * * * a peculiar risk of physical harm to others unless special precautions are taken."

The employees of an independent contractor come within the word "others" in sections 413, 416 and 427 of the Restatement. Woolen v. Aerojet General Corporation, 57 Cal.2d 407, 20 Cal. Rptr. 12, 369 P.2d 708, 711; Mallory v. Louisiana Pure Ice & Supply Co., 320 Mo. 95, 6 S.W.2d 617, 623-627; International Harvester Co. v. Sartain, 32 Tenn. App. 425; 222 S.W.2d 854, 865-868.

We hold the duties outlined in the quoted sections of the Restatement are owed by a principal contractor to workmen of an independent contractor on the job.

See 57 C. J. S., Master and Servant, section 590, as supporting this exception to the general rule.

X. Plaintiff's last exception to the general rule is concerned with the duty owed an invitee. An employee of a subcontractor doing work contracted to be done by it is an

invitee of the general contractor. Revels v. Southern California Edison Co., 113 Cal. App.2d 673, 248 P.2d 986, 989; Ferrel v. Safway Steel Scaffolds, 57 Cal.2d 651, 21 Cal. Rptr. 575, 371 P.2d 311, 314; Fisher Construction Co. v. Riggs, Tex. Civ. App., 320 S.W.2d 200, 205, 206; Raich v. Aldon Construction Co., 129 Cal. App.2d 278, 276 P.2d 822, 827. We have recently passed upon the duty owed by a possessor of land to an invitee in Hanson v. Town and Country Shopping Center, Inc., 259 Iowa 542, 144 N.W.2d 870, and what was said there need not be repeated here.

Defendant contends a general contractor is not obliged to see that a subcontractor maintains a safe place for employees with respect to the changing conditions created by the subcontractor and his employees as construction work progresses; that the accident arose not because of any latent or hidden defect in the premises but directly from the mode of doing the work; there is no allegation of active negligence on the part of Weitz. But the problem here is whether there is substantial evidence of the existence of certain exceptions to the general rule from which a jury would be justified in finding defendant, a general contractor, owed a duty to use ordinary care to provide a safe place for the subcontractor's employees to work.

It seems clear the exceptions asserted by plaintiff to the general rule are recognized by the authorities. We conclude there is substantial evidence of the existence of each of them and that a jury would be justified in finding defendant owed a duty toward decedent and would be liable for a negligent exercise of it.

XI. Our next problem is whether a jury could find defendant was negligent in the exercise of this duty.

Generally, questions of negligence, contributory negligence and proximate cause are for the jury; it is only in exceptional cases that they may be decided as a matter of law. Rule 344(f) (10), R. C. P.

From the facts narrated in Division III, supra, a jury could find defendant was negligent in not providing additional planking as scaffolding for the workers to walk on as they carried form boards to the area beyond the poured surface

where Comisky was working and in failing to require the wire mesh strips which would support a man's weight to be placed over the boards already in place as soon as a 3½- or 4-foot space had been made available. Further, a jury could find there was a space at least 4 to 6 feet beyond the poured surface that could have been covered with gypsum as a safety precaution, especially in light of defendant's requiring the men on the top floor of the structure to wear hard hats.

As stated, the area through which Erwin fell was unprotected by wire, gypsum, planking or scaffolding.

Defendant had either furnished planking for the north end of the deck for use in storing materials and to serve as a platform to walk on, or at least permitted it to remain on the deck after the bricklayers had finished with it. Plaintiff's evidence detailed how the process of roof construction was carried on.

We think there is substantial evidence from which a jury could find defendant negligently exercised its duty to use ordinary care to provide a safe place for the subcontractor's employees to work. The trial court was correct in the first instance in submitting the stated specifications to the jury.

XII. The issue of proximate cause was for the jury. "In several recent decisions we have approved this from Restatement, Second, Torts, section 431: 'The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm' [citing cases].

"Nor will the fact that some other cause operates with defendant's negligence to produce the injury relieve the defendant if the injurious result is traceable in some material degree to his want of due care [citing cases].

"Of course there may be more than one proximate cause of an injury." Davidson v. Cooney, supra, 259 Iowa at pages 1283, 1284.

XIII. It is only the exceptional case in which the issue of freedom from contributory negligence should not be submitted to the jury—only where such negligence is so pal-

pable, flagrant and manifest that reasonable minds may fairly reach no other conclusion; if there is any evidence tending to establish decedent's freedom from contributory negligence, the question is for the jury and doubts should be resolved in favor of such submission. Goman v. Benedik, 253 Iowa 719, 721, 113 N.W.2d 738, 739, and citations.

We are satisfied the trial court correctly submitted the contributory negligence issue to the jury. This is not the exceptional case in which reasonable minds could fairly reach no other conclusion than that decedent was contributorially negligent.

XIV. Plaintiff's final assigned error as to the judgment notwithstanding concerns the doctrine of assumption of risk. It is an affirmative defense and the burden of pleading and proving it was on defendant. Frederick v. Goff, 251 Iowa 290, 296, 100 N.W.2d 624, 628; Thornbury v. Maley, 242 Iowa 70, 78, 45 N.W.2d 576, 581. Here the doctrine was not pleaded and is not available. The trial court erred in sustaining defendant's motion on this ground.

XV. For the reasons set forth, the sustaining of defendant's motion for judgment notwithstanding and entering judgment for defendant was error, and the first of the two main questions presented on this appeal, Division I, supra, is answered in the affirmative, the second need not be determined.

XVI. Because it sustained Division I of defendant's motion, the trial court did not rule on Divisions II, III and IV thereof, observing that "such alternative motions are overruled by operation of law subject to review by the supreme court in the event plaintiff should appeal and the alternative motions are argued."

Because of our holding as to Division I of the motion, it is necessary that we consider the remaining divisions thereof.

Division II is in the alternative to Division I and asks that a new trial be granted because of alleged erroneous instructions to the jury. Division III, in the alternative, also asks a new trial because certain instructions defendant requested were not given. Division IV, also in the alternative, asks the same relief on the claimed excessiveness of the verdict.

XVII. In support of the assigned errors in giving some of the instructions defendant argues it was the subcontractor's responsibility, not defendant's, to furnish a reasonably safe place for the subcontractor's employees to work, to supervise and provide for the safety of all their workmen against dangers inherent in and growing out of the subcontractor's work; it was not defendant's duty to furnish material for the subcontractor's work or to guard its employees from dangers in carrying out orders of their immediate superiors.

What is said in the prior divisions hereof sufficiently answers this argument.

XVIII. Defendant's fifth assignment is directed to the court's ninth instruction on contributory negligence. After referring to a previous definition of the term and placing the burden on plaintiff to establish freedom therefrom by a preponderance of the evidence, the instruction continued:

▆▆▆▆ "In considering the contributory negligence of plaintiff's decedent, if any, you may take into consideration his age, experience, and general situation in life. You should charge him only with that degree of care that would be expected of an ordinary person of that age and experience."

We find no fault with the quoted statement in the light of the whole instruction. 65A C. J. S., Negligence, section 146; 38 Am. Jur., Negligence, section 204; Lehmuth v. Long Beach Unified School District, 53 Cal.2d 544, 2 Cal. Rptr. 279, 348 P.2d 887, 894; Satariano v. Sleight, 54 Cal. App.2d 278, 129 P.2d 35, 38, 39. As tending to support our position see also Hill v. City of Glenwood, 124 Iowa 479, 482, 100 N.W. 522, 523.

Of course, decedent's age, experience and general situation in life are but some of the matters the jury may properly consider in deciding the issue of freedom from contributory negligence.

XIX. We find no reversible error in failure to give defendant's requested instructions. The substance of many of the requests are embodied in the instructions given. Some indicate theories rejected in Divisions V, VII and IX hereof and were properly denied. The effect of failure to give requested instruction seven is answered by Mallinger v. Brussow, 252

Iowa 54, 58, 59, 105 N.W.2d 626, 628, 629. Other requests appear to overlook the fact that passive negligence may be actionable.

XX. Division IV of defendant's motion alleges the verdict is excessive beyond reason, contrary to the instructions and not supported by the evidence.

The fair and reasonable value of the funeral expenses was $1197.27. Erwin's life expectancy at the time of death was 52.19 years. He was not killed immediately upon his fall. He was taken by ambulance to the Marshalltown hospital and died on the way to Iowa City about two and a half hours after the fall. There was evidence of Erwin's apparent pain and suffering during this time.

During his four years in a Marshalltown high school Erwin's grade average was 91.1, sixth in his class, graduating with honors and a mathematics award. He participated in speech, drama, music, football and basketball, was president of his senior class and captain of the football team. He had an I. Q. of 115, wanted to be a doctor of veterinary medicine and had been accepted at Iowa State University to begin study in the fall.

Erwin's father, age 54, has lived in Marshalltown virtually all his life, his work has been wholesale grocery selling, calling on retail groceries, hotels and restaurants. He worked for one company 25 years and another five years.

Erwin's mother is a registered nurse and at the time of trial was the head nurse in the pediatric department of the Marshalltown hospital.

Erwin was described as physically strong, in perfect health, even tempered, quiet, reserved, friendly, obedient and dependable. He was further described by one witness as forthright, pleasant and socially well adjusted. His uncle described him as a boy of excellent judgment, settled for his age, a diligent worker, quite an athlete and possessing a grown-up attitude. When younger he carried newspapers, worked part time in the neighborhood grocery, during the summer on the farm and in a furniture store where he earned $1.50 an hour, saved his money and asked for no allowance from his parents. His father

described him as having an adult mind with adult thinking. "He thought ahead at all times. He wanted to be something." He generally bought his own clothing out of the money he made.

Deducting from the amount of the award interest on the reasonable funeral expense for such time as it was prematurely incurred, not to exceed the cost as an allowable item and reducing further the resulting amount by such sum as will fairly and reasonably compensate for the pain and suffering during the two and one-half hours decedent survived the accident, the verdict awarded for present value of the damages to the decedent's estate would be approximately $67,500.

It is our conclusion the verdict is clearly above what the record justifies. Without repeating what was said in Tedrow v. Fort Des Moines Community Services, Inc., 254 Iowa 193, 201–204, 117 N.W.2d 62, 66–68, we refer to and approve it.

Unless a remittitur is filed within 30 days from the filing of this opinion of all the verdict in excess of $50,000 with interest thereon and costs, a new trial will be granted. If such remittitur is so filed, judgment on reduced amount shall be entered.— Reversed and remanded.

All JUSTICES concur except BECKER, J., who concurs specially, and STUART, J., who dissents.

BECKER, J.—I concur in all divisions except Division XX. My views on ordering remittiturs are set forth in a dissent in Hurtig v. Bjork, 258 Iowa 155, 165, 138 N.W.2d 62.

STUART, J. (dissenting)—I am reluctant to call the following comments a dissent from the well written and amply supported majority opinion. I would not be justified in requesting additional time to write a full dissent in view of the lack of support for my position. Since I am unable to agree with the result reached here I feel the reasons for my dissent should be stated briefly.

The majority opinion recognizes the general rule that one who employs an independent contractor is ordinarily not liable for the latter's torts and then holds the facts here created a jury question as to the applicability of all four exceptions to the general rule urged by plaintiff. In making these comments I

will assume the exceptions are all valid. Even so, I do not believe any of them are applicable to these facts. In my opinion, to so hold, leaves little, if any, room for the application of the general rule to construction accidents.

The opinion says: "Plaintiff contends Erwin either slipped on a bulb-tee or tripped on wire and fell through a form board which was yet unprotected by wire or gypsum. The fall occurred about 15 feet south of the poured slab at approximately the middle of the roof." It seems to me that any negligence which caused a fall as claimed by plaintiff must necessarily have been connected with the subcontractor's job on which the deceased was working. The opinion does not refer to evidence tending to show defendant retained any control over the operative detail of subcontractor's work.

Reliance is placed on Article 12 of the contract between the owner and principal contractor. It is claimed this shows a retention of control over safety matters. The terms are very general and it appears to me that rather than being a retention of control of safety procedures, it is actually a delegation of responsibility from the owner to the contractor. In the contract with the subcontractor, it agreed "to assume toward (the contractor) all the obligations and responsibilities that he * * * assumes toward the owner."

In my opinion this amounted to a delegation of control of safety procedures connected with the subcontract to the subcontractor. I think this was not only as proper as delegating the responsibility from the owner to the principal contractor but advisable. The responsibility for safety measures in the performance of the job should rest upon those most familiar with the dangers and hazards of the work. The general contractor might not have sufficient knowledge concerning details of the operation to prescribe adequate safety rules. I could see where a much more dangerous situation could develop if a general contractor tried to retain control over the details of a subcontractor's work.

The claimed assumption of control over safety measures by the general contractor related to safety procedures for the whole job. Hard hats were required. Dangerous situations were called to the subcontractor's attention. There was no evidence defend-

ant ever exercised control over the method of doing a job or interfered with the subcontractor's procedures.

As I believe the control of safety precautions connected with the details of performing the work under the subcontract were delegable and had been delegated here, there was no contractual obligation on which to base a third-party beneficiary argument.

The holding that the general contractor is liable here under the exception to the general rule that the job was such that it was "likely to create a peculiar risk unless special precautions are taken" places the whole construction industry under a responsibility which would best be placed on those actually employing persons to do the work. Construction work, alone, should not be held to create such a peculiar risk.

Even if an employee of a subcontractor is a business invitee, it should not be a basis for liability here. Plaintiff's own theory of the accident does not attempt to prove there was an unsafe place to work except such condition as was created by the very work in which deceased was engaged. There was no claim of any hidden trap or defect. Conditions were changing all the time, partly because of the work performed by deceased. There was no proof of superior knowledge on the part of defendant or any reasons to believe defendant would be more familiar with these temporary conditions than deceased.

There was a suggestion that all planks on the roof were in use for other purposes. There was no proof additional planks would have been used for walkways had they been available.

I believe the trial court was right and should be affirmed.