**D.R.R., Social Security Number 484–62–7735, A Female, Plaintiff-Appellant,**

v.

**ENGLISH ENTERPRISES, CATV, DIVISION OF GATOR TRANSPORTATION, INC., and American Heritage Cablevision, Inc., Defendants-Appellees.**

**No. 83–789.**

Court of Appeals of Iowa.

Sept. 6, 1984.

Lyle A. Rodenburg, Council Bluffs, for plaintiff-appellant.

Curtis Hewett and Philip Willson of Smith, Peterson, Beckman & Willson, Council Bluffs, for defendant-appellee English Enterprises.

David A. Svoboda and Lyman L. Larsen of Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., and David F. McCann, Council Bluffs, for defendant-appellee American Heritage.

Heard by OXBERGER, C.J., DONIEL-SON, and SCHLEGEL, JJ.

SCHLEGEL, Judge.

Plaintiff appeals the trial court's grant of summary judgment in favor of English Enterprises and American Heritage. She claims the court erred in finding that there were no genuine issues of material fact permitting plaintiff to prevail on the various theories she alleged. We reverse.

Plaintiff has filed a petition claiming damages resulting from her violent and forcible rape by Kenneth Logston. The record shows that the rape occurred and that Logston has been convicted of that crime as well as First Degree Burglary, and has been sentenced to a term of imprisonment.

Logston was engaged in installing cable television services for residents of Council Bluffs, Iowa, in pursuance of the construction and installation of a cable television system in that city. The defendant, American Heritage Cablevision, Inc., had entered into a franchise agreement with the city for the furnishing of such service to the residents thereof. The record also shows that American and the defendant English Enterprises, CATV, entered into a contract that required English to furnish personnel to connect the cable system to the television sets of individual residents. English hired Logston as an installer.

■ I. *Scope of Review.* In reviewing the grant or denial of a summary judgment motion, we view the underlying facts contained in the pleadings and the inferences to be drawn therefrom in the light most favorable to the party opposing the motion, and give to such party the benefit of any doubt as to the propriety of granting summary judgment. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied, and to reverse the grant of summary judgment if it appears from the record there is an unresolved issue of material fact. *Meylor v. Brown,* 281 N.W.2d 632, 634 (Iowa 1979); *Froh-*

*wein v. Haesemeyer,* 264 N.W.2d 792, 795–96 (Iowa 1978).

II. *Agency Relationship.* The trial court, in granting summary judgment in favor of American, stated the following:

2. Regarding the claim of Plaintiff in Division III of her Petition alleging that American Heritage was negligent, *there is no genuine issue of fact that Kenneth Logston was an employee or agent of American Heritage at the time of his criminal acts,* and the Court concludes as a matter of law in this regard ·that Defendant American Heritage could not accordingly be held vicariously liable for any criminal acts of the said Logston. (Emphasis added).

■ We disagree. There is ample evidence in this record to support a finding that Logston was an agent and under the control and clothed with the authority of both American and English. Whether he is an employee of either or both defendants is a factual question remaining to be decided by the factfinder. It is undisputed that Logston was engaged by English to install residential service connections to American's cable system. Logston's first contact with plaintiff was at the time Logston connected her television set to the cable system and installed the necessary equipment. Logston also presented a contract between American and plaintiff for her signature and requested and received payment for his installation service on behalf of American. His work was in furtherance of the service being performed by English for American. In addition, both English and American had the power to terminate Logston's authorization to install cable television services.

■ Viewing these facts in the light most favorable to plaintiff, a factfinder could reasonably determine that Logston was an agent or employee of both American and English. This conclusion is possible even though American claims a contractor-subcontractor relationship with English, and English claims that Logston was an independent contractor in his relationship with English and American. A person can be both an agent and an independent con-

tractor. *See* Restatement (Second) of Agency §§ 2(3), 14N (1958).

III. *Negligent Hiring.* In two divisions of her petition, plaintiff claims that both American and English were guilty of negligently hiring Logston. Plaintiff urges us to adopt a cause of action based upon Restatement (Second) of Agency § 213 and the decisions of a large number of states. Section 213 provides as follows:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

a. In giving improper or ambiguous orders or in failing to make proper regulation; or

b. In the employment of improper persons or instrumentalities in work involving risk of harm to others; or

c. In the supervision of the activity; or

d. In permitting, or failing to permit, negligent or other tortious conduct by persons, whether or not his agents or servants, upon premises or with instrumentalities under his control.

Decisions of other states contain language to a similar effect. For example:

An employer who knew or should have known of his employee's propensities and criminal record before a commission of an intentional tort by an employee upon a customer who came to employer's place of business would be liable for damages to such customer.

*Hersh v. Kentfield Builders, Inc.*, 385 Mich. 410, 412, 189 N.W.2d 286, 288 (1971).

■ There are no Iowa cases directly on point, and there is no definitive statement approving such a cause of action. Nevertheless, we believe that a negligent hiring cause of action does exist under Iowa law when the employer owes a special duty to the injured party. In *Nesbit v. Chicago, Rock Island & Pacific Ry.*, 163 Iowa 39, 143 N.W. 1114 (1913), the court discussed the liability of an employer for the acts of its servants and stated:

[T]he modern doctrine is that, if the master owes an affirmative duty of protecting a party from injury, as a passenger upon a railway train, an occupant of a sleeping car, a guest of an inn, or any other person to whom the master owes an affirmative duty of protection, he is responsible for the wrongful, malicious, or tortious acts of its servants, although not done in the course of their employment. . . .

The reason for these exceptions or apparent exceptions to the rule of nonliability, where the acts of the servant is not within the scope of his employment, actual or apparent, is that the master owed the person injured some special duty . . ., and this exception has been applied in many cases where patrons of a carrier were assaulted by an employee thereof.

*Id.* at 50–52, 143 N.W. at 1119–20 (citations omitted). Although *Nesbit* actually considered whether the employee was acting within the scope of his employment, the Iowa Supreme Court applied the quoted rule of law in *Fagg v. Minneapolis & St. Louis Ry.*, 175 Iowa 459, 462, 157 N.W. 148, 148–49 (1916) (passenger assaulted and beaten by brakeman), and *Garvik v. Burlington, Cedar Rapids & Northern Ry.*, 131 Iowa 415, 418–19, 108 N.W. 327, 328 (1906) (passenger raped by brakeman). More recently, in *Giarratano v. Weitz Co.*, 259 Iowa 1292, 147 N.W.2d 824 (1967), the court held that a construction company which contractually assumed a special duty to protect all workmen on a project could be liable for negligence even though the company hired an independent contractor to do the project. *Id.* at 1305, 147 N.W.2d at 832.

These Iowa cases are consistent with the development of the negligent hiring theory. First it was held that employers could be liable to their employees for the failure to use care in the selection of coemployees. Later, *the duty was extended to third parties if they stood in some special relation to the employer.* This special relation included licensees, invitees, or customers of the employer. Thus, the courts were looking for some connection between the plaintiff and the employment of the wrongdoer. Note, *The Re-*

*sponsibility of Employers for the Actions of Their Employees: The Negligent Hiring Theory of Liability,* 53 Chi.-Kent L.Rev. 717, 721 (1979) (footnote omitted) (emphasis added).

Therefore, we conclude Iowa law allows a negligent hiring cause of action when the employer owed a special duty to the plaintiff.

Circumstantial evidence in this action could justify a factfinding that Logston obtained a master key to plaintiff's apartment through his employment and used that key when entering the apartment to attack plaintiff. There is evidence that the cable system was installed in plaintiff's locked apartment when she was absent. This evidence leads to the inference that the cable installers working for English had access to a master key to her apartment. Although Logston was admitted into the apartment by plaintiff when he connected her television to the cable system, there is circumstantial evidence that on the night of the attack Logston entered the apartment by using a key.

■ We conclude that this evidence of access to a master key through employment with English, if true, is sufficient to create a special duty owed to plaintiff. The court in *Nesbit* indicated a special duty inheres in the relationships between a railroad and a passenger of a railroad train or a sleeping car, and between an innkeeper and his guest. *See* 163 Iowa at 50, 143 N.W. at 1119. We believe the relationship between the tenant of an apartment and a company that uses master keys to install a cable system in the tenant's apartment pursuant to a public franchise is sufficiently similar to the relationships listed in *Nesbit* to create a special duty. The company is analogous to the carrier because both operate pursuant to a public franchise, and the company is analogous to an innkeeper because both have access to master keys to another person's living quarters. We therefore conclude there is a genuine issue of material fact whether English provided master keys to installers, thus creating a special duty to plaintiff, and whether the

hiring of Logston without checking his criminal record was a breach of that special duty.

A similar question of fact exists with regard to American, even though English was an independent contractor. Comment (e) to section 214 of the Restatement (Second) of Agency (1958) states:

> *e. Voluntary relations.* A master or other principal may be in such relation to another that he has a duty to protect, or to see that due care is used to protect, such other from harm although not caused by an enterprise which has been initiated by the master or by things owned or possessed by him. This duty ... may be imposed by law as incident to a relation voluntarily entered into, as the relation of carrier and passenger, or by statute. ... In situations coming within the rule stated in this Section, the fact that the one to whom the performance of the duty is delegated acts for his own purposes and with no intent to benefit the principal or master is immaterial.

The Iowa Supreme Court has approved of this principle in *Giarratano v. Weitz Co.,* 259 Iowa 1292, 147 N.W.2d 824. The court stated:

> One who owes, and is personally bound to perform, an absolute and positive duty to the public or an individual cannot escape the responsibility of seeing that duty performed by delegating it to an independent contractor, and will be liable for injuries resulting from the contractor's negligence in the performance thereof, whether the duty is imposed by law or contract.

*Id.* at 1304, 147 N.W.2d at 824 (quoting 57 C.J.S. *Master and Servant* § 591).

Although the trial judge did not rule that a cause of action for negligent hiring does not exist in Iowa, his order granting summary judgment contains two conclusions of law that would undermine the cause of action in this case if allowed to stand. We deal with each separately.

■ A. *Superseding Cause.* The trial court ruled that Logston's rape of plaintiff

was an intentional, criminal act that constitutes a superseding cause as a matter of law. We disagree.

In *Haumersen v. Ford Motor Co.*, 257 N.W.2d 7 (Iowa 1977), the court stated:

We have here a problem of legal cause. . . .

[A] superseding cause "is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement, Torts 2d § 440. *See Schnebly v. Baker*, 217 N.W.2d 708 (Iowa). In order for an intervening act or force to relieve an individual from liability, it must not have been a normal consequence of his acts or have been reasonably foreseeable. *Leaders v. Dreher*, 169 N.W.2d 570 (Iowa); *Webber v. E.K. Larimer Hardware Co.*, 234 Iowa 1381, 15 N.W.2d 286; Restatement, Torts 2d § 447.

*Id.* at 15.

"Dean Prosser remarked that 'this becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.'" *State v. Marti*, 290 N.W.2d 570, 585 (Iowa 1980) (quoting W. Prosser, *Handbook of the Law of Torts*, § 42, at 244 (4th ed. 1971)).

We note that Iowa, as a matter of policy, has allowed extension of the responsibility of employers for the criminal acts of their servants when the employer owed a special duty to the victim. *Fagg v. Minneapolis & St. Louis Ry.*, 175 Iowa 459, 462, 157 N.W. 148, 148–49 (1916) (passenger asssaulted and beaten by brakeman); *Garvick v. Burlington, Cedar Rapids & Northern Ry.*, 131 Iowa 415, 418–19, 108 N.W. 327, 328 (1906) (passenger raped by brakeman). Therefore, a genuine issue of fact exists whether Logston's criminal act was a superseding cause.

Defendants American and English have cited *Roadway Express, Inc. v. Piekenbrock*, 306 N.W.2d 784 (Iowa 1981), as support for the trial court's ruling on superseding cause. In *Piekenbrock*, the court held that the theft of an automobile in which the keys were negligently left was a superseding cause that relieved the negligent driver of liability to a party injured by the thief driving the stolen car. *Id.* at 786. *Piekenbrock*, however, can be distinguished and does not control the outcome of the case at bar. In *Piekenbrock*, the driver who left the keys in the ignition was not in a special relationship to the injured party that would result in a special duty. In the instant case, however, the defendants owed plaintiff a special duty if they gave Logston access to a master key to plaintiff's apartment. Because of the special duty present, *Fagg*, 175 Iowa 459, 157 N.W. 148, and *Garvick*, 131 Iowa 415, 108 N.W. 327, control the outcome of the issue of superseding cause.

■ American and English also cite many cases from other jurisdictions. *F & T Co. v. Woods*, 92 N.M. 697, 594 P.2d 745 (1979), is typical of those cases. In *Woods*, the defendant's employee delivered a television to the plaintiff's apartment. Four nights later the employee returned, entered the apartment without permission, and raped the plaintiff. The New Mexico court held that negligent hiring and retention of the employee could not be the proximate cause of the plaintiff's injury. *Id.* at 701, 594 P.2d at 749. However, *Woods* does not control the case at bar because the employment relationship in *Woods* was in no way instrumental to the employee's act of entering the victim's apartment and raping her.

At the time of the incident [the employee] was on his own time, was not acting within the scope of his employment, was not in defendant's business vehicle, and had no authority from defendant to enter plaintiff's apartment. [The employee] did not enter plaintiff's apartment to deliver or repair an appliance. The act did not occur in or near defendant's place of business.

*Id.* at 698, 594 P.2d at 746. In contrast, an employer may be held liable for negligently hiring an employee who commits a criminal act when the employment relationship is instrumental to the employee committing

the crime. For example, in *Coath v. Jones,* the court held that the employer could be liable for negligently hiring an employee who "gained entrance to plaintiff's home by [falsely] representing he was there at defendant's direction and on defendant's business" and then raped the plaintiff. 277 Pa.Super. 479, 481, 419 A.2d 1249, 1250 (1980). Because there is evidence that master keys, which were available to Logston through his employment, played an instrumental part in Logston's criminal act, we hold there is a material question of fact for the jury on the issue of superseding cause. *See Haumersen v. Ford Motor Co.,* 257 N.W.2d at 15 (factual dispute or room for reasonable difference of opinion on intervening cause creates jury question).

■ B. *Cause in Fact.* The trial court held that, as a matter of law, no act or failure to act by English could be the cause in fact of plaintiff's injury. We disagree.

Factual causation is often expressed in terms of the *sine qua non*—or "but for"— test. *State v. Marti,* 290 N.W.2d at 585 (citing authorities). Viewing the evidence in the light most favorable to plaintiff, a material issue of fact exists whether plaintiff's injury would not have occurred but for English's failure to investigate Logston's criminal record and background.

IV. *Third Party Beneficiary.* Plaintiff contends she is a third-party beneficiary of both the franchise agreement between the city and American and the contract between American and English. The trial court ruled she was not a third-party beneficiary of either agreement. We disagree.

Actions by third-party beneficiaries were discussed in *Khabbaz v. Swartz,* 319 N.W.2d 279 (Iowa 1982). The court stated:

In order to enforce a contract, the third party beneficiary must show that the contract was made for his express benefit. *Olney,* 251 Iowa [1379] at 1384– 85, 105 N.W.2d [515] at 519; 2 S. Williston, *A Treatise on the Law of Contracts,* § 356A at 836 (Jaeger ed. 1959) (" 'the authorities are in accord that one suing as a third party beneficiary has the burden of showing that the provision was

for his direct benefit' and unless he can sustain this burden, he will not be permitted to sue on the agreement."). "The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." *Bailey v. Iowa Beef Processors, Inc.,* 213 N.W.2d 642, 645 (Iowa 1973), *cert. denied,* 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974).

*Id.* at 285 (footnote omitted).

The court in *Khabbaz* did not limit its inquiry to the language of the contract; it also examined the testimony of the parties involved. *Id.* We, therefore, can look to the circumstances surrounding the adoption of the agreements in question.

■ The citizens of Council Bluffs had to vote to approve American as franchisee. That fact, in conjunction with the language of some of the provisions in the franchise agreement, when viewed in the light most favorable to plaintiff, create a genuine issue of material fact whether plaintiff was an intended beneficiary of the franchise, and whether a breach of that franchise occurred which injured plaintiff.

The contract between English and American provided that English would give polygraph tests to its cable installers. The list of questions to be used in the polygraph test, and certain statements in the deposition of American's representative, Thomas Belcher, constitute evidence that, when viewed in the light most favorable to the plaintiff, create a genuine issue of material fact whether plaintiff was an intended beneficiary of the contract between American and English, and whether a breach of that contract occurred which injured plaintiff.

V. *Implied Warranties.* In addition to her other theories of recovery, plaintiff asserts she is entitled to recover for breach of implied warranties arising from her contract with American. She contends the contract impliedly warrants that the installers working for American have a reasonable degree of honesty and integrity. We find no support for this theory.

The only authority plaintiff cites to support her theory is *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976), in which the court held that a person holding himself out as specially qualified to perform funeral and burial services can be liable for breach of an implied duty to exercise proper skill and perform in a workmanlike manner. Plaintiff's theory, however, does not rest on a duty to exercise proper skill and workmanship, but rests instead on a duty to insure the good character of workmen. Therefore, *Meyer* does not support her theory.

We conclude that Iowa law does not imply a contractual duty to insure the good character of workmen.

REVERSED AND REMANDED.