VERNON TEDROW, as administrator of estate of Rose Marie Tedrow, deceased, appellee, v. FORT DES MOINES COMMUNITY SERVICES, INC., and BRUNO CERETTI, appellants.

No. 50681.

(Reported in 117 N.W.2d 62)

194

September 18, 1962.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellant Fort Des Moines Community Services, Incorporated.

Irish & Haughey, of Altoona, for appellant Bruno Ceretti.

Jones, Rockwell & Oliver, of Des Moines, for appellee.

THOMPSON, J.—This is another of a series of cases arising out of a fire in the Fort Des Moines Housing Area near Des Moines which caused the deaths of five persons: four members of the Tedrow family, and Margaret Anne Hutchinson. The fire, and the death of plaintiff's decedent, occurred on February 16,

1956. Some phases of the tragedy have been before us in four appeals: Hutchinson v. Des Moines Housing Corporation, 248 Iowa 1121, 84 N.W.2d 10; Tedrow v. Des Moines Housing Corporation, 249 Iowa 766, 87 N.W.2d 463; Hutchinson v. Des Moines Housing Corporation, 250 Iowa 1306, 99 N.W.2d 81; and Hutchinson v. Fort Des Moines Community Services, Inc., 252 Iowa 536, 107 N.W.2d 567. The facts have been sufficiently stated in those cases, and we shall not again refer to them in detail. The three Hutchinson cases were all concerned with the attempt of the administrator of the estate of Margaret Anne Hutchinson to recover damages for her claimed wrongful death. The Tedrow case reported in 249 Iowa 766, 87 N.W.2d 463, involved a claim of the administrator of the estate of Margaret Tedrow. In the present case we have involved the estate of Rose Marie Tedrow.

In the appeals in the four preceding cases we have established certain rules which have the effect of precedents in the case at bar. It is true they are not the law of this case in the sense that they are absolutely controlling, since the parties are not the same. But they are strong precedents because they arise from consideration of much the same facts and the same contentions of the opposing parties. We are not disposed at this stage to depart from what we have said in the prior cases. A consideration of the opinions therein filed, particularly in Hutchinson v. Des Moines Housing Corporation, 250 Iowa 1306, 99 N.W.2d 81, leads to the conclusion that the case was properly submitted to the jury as against the defendant Fort Des Moines Community Services, Inc., but that the motion for directed verdict of the defendant Bruno Ceretti, made at the close of all the evidence, should have been granted.

I. In the first Hutchinson case, 248 Iowa 1121, 84 N.W.2d 10, there was involved only questions of pleading. In the Tedrow case, 249 Iowa 766, 87 N.W.2d 463, we upheld directed verdicts in favor of all defendants. Thereafter, the Hutchinson case came on for trial and verdicts were directed in favor of all three defendants; Des Moines Housing Corporation, Fort Des Moines Community Services, Inc., and Bruno Ceretti. Upon appeal, we affirmed as to Des Moines Housing Corporation and Bruno Ceretti; but reversed as to Fort Des Moines Community Services,

Inc., holding that the evidence as against it was sufficient to require submission to a jury. In so doing, we determined that the evidence as to the liability of Fort Des Moines Community Services, Inc., was stronger than in the first Tedrow case, supra. Hutchinson v. Des Moines Housing Corporation, 250 Iowa 1306, 1323, 99 N.W.2d 81, 91.

In the instant case, it is apparent that precedent, if followed, requires us to make the same determination as to jury submission as in the Hutchinson case last above referred to, unless there was a difference in the evidence introduced. We shall consider first the record as it bears on the defendant Bruno Ceretti.

 II. The only specification submitted in the case at bar was that the defendants were negligent "by allowing pennies to be placed in the fuse sockets thereby allowing an overload of electricity to flow through the wires thus causing a dangerous condition and a fire hazard." The record shows substantial evidence that the duty of maintaining the premises in the tavern part of the building leased to Ceretti was upon the defendant Fort Des Moines Community Services, Inc. The tenant by the terms of the lease was furnished all utilities except telephone, and maintenance and minor repairs devolved upon the lessor. The utilities were to be kept in good operating condition by the Fort Des Moines Community Services, Inc.

We pointed this out in Hutchinson v. Des Moines Housing Corporation, supra, loc. cit. 250 Iowa 1311, 1312, 99 N.W.2d 81, 84. We there said: "The failure of Fort Des Moines Community Services, Inc., to comply with its agreement, if the jury so finds, cannot therefore be charged to Ceretti. The exception would be if defendants [sic] produced evidence that Ceretti or his employees had placed the pennies in the fuse wells." We affirmed a directed verdict for Ceretti in that case, thereby holding there was no such evidence.

Unless we are now to overrule what we said in the Hutchinson case last referred to, we can uphold submission of the issues as to Ceretti in the instant case only if there was some additional evidence against him. The evidence here was substantially the same as in the Hutchinson case, with the exception of the testi-

mony of one Robert Horton, an electrician. He testified that he was called to examine the wiring in the tavern in 1952, and found at that time there were pennies in the three fuse sockets, which he removed. He said the circuits were overloaded, and the electrical system was inadequate for the purposes for which it was being used. He told the bartender the circuits were overloaded. This testimony was objected to by both defendants because it was too remote; and by Fort Des Moines Community Services, Inc., because it was not binding upon it. The objections were denied. We shall discuss this evidence further in a following division.

We think it unnecessary to determine the admissibility of the evidence as against Ceretti, however, since in any event it does not show that the pennies which were found in the fuse box after the fire were placed there by him. Those in the fuse box in 1952 were removed by Horton. The incident in no manner supports an inference that the pennies in the box at the time of the fire were installed by Ceretti or that he had knowledge of them. Admissible or not, the testimony did not change the situation as to Ceretti. Under the precedent of Hutchinson v. Des Moines Housing Corporation, supra, 250 Iowa 1306, 99 N.W.2d 81, there was no jury question as to Ceretti and the court was in error in submitting the case against him.

III. The defendant Fort Des Moines Community Services, Inc., hereinafter referred to as the defendant, is in a different and less advantageous position. The Hutchinson case, last supra, determined that the evidence there was sufficient to engender a jury question. With this precedent, it would have been strange if counsel for plaintiff in the case at bar, who were the same as in the Hutchinson case, had not attempted to follow the trail so blazed. In fact this was substantially done. For that reason we shall not consider in detail its first assignment of error, which asserts its motion for directed verdict at the close of all the evidence should have been granted. The Hutchinson case is a strong precedent for the ruling of the trial court, and we are not disposed to disturb it.

IV. However, the defendant urges other errors which are assigned as grounds for reversal and which require more dis-

cussion. One of these attacks the competency, by which we understand is meant admissibility, of the testimony of the witnesses Horton and Herron. We have referred to the testimony of Horton above. It seems to be the defendant's thought that this referred to a time—1952—too remote from the date of the fire—1956—to have any competency on the question before the jury. It must be kept in mind that one of the specifications of negligence alleged by the plaintiff in his petition was this: "By failing to make adequate periodic inspection and maintenance of the electrical system." The court did not in the final event submit this specification to the jury; but at the time Horton's testimony was offered this ruling had not been made and could not be known. We think the testimony had a proper bearing on that issue and was competent in that respect. It tended to show that in 1952 the electrical system was inadequate and overloaded; and in view of the duty of the defendant to furnish utilities and keep them in working order and make minor repairs it could well be urged that a showing of overload and improper maintenance in prior years could be considered. This is particularly true in view of the testimony of other witnesses that no substantial repairs had been made for some time before the fire. In fact, while the point is not urged, we think it proper to say that this specification of negligence might well have been submitted to the jury.

As to the question of remoteness in time, the rule is well established that this is ordinarily to be determined by the sound discretion of the trial court. Brower v. Quick, 249 Iowa 569, 581, 88 N.W.2d 120, 127; Hall v. West Des Moines, 245 Iowa 458, 468, 62 N.W.2d 734, 740; Hayes v. Chicago, Rock Island & Pacific Railway Co., 239 Iowa 149, 154, 30 N.W.2d 743, 746; Herr v. Lazor, 238 Iowa 518, 525, 28 N.W.2d 11, 15. We find no abuse of discretion here.

V. The witness Edward Herron, the state fire marshal, was permitted to answer a hypothetical question, his answer being that assuming the matters stated in the question to be established, the destructive fire of February 16, 1956, was caused by the pennies in the fuse box. We have examined the record in Hutchinson v. Des Moines Housing Corporation, supra, 250 Iowa

1306, 99 N.W.2d 81. From it we find that the same hypothetical question, in substance, was asked of the same witness, and was challenged upon the same grounds now urged. The opinion in that case, after referring to the well settled rule that generally the form and content of a hypothetical question and the admissibility of its answer are within the sound discretion of the trial court, said that the ruling of the court in admitting the answer was correct. Hutchinson v. Des Moines Housing Corporation, supra, loc. cit. 250 Iowa 1320, 99 N.W.2d 89. Again, we are faced either with reversing our holding in the previous case or upholding the ruling of the trial court here which admitted this testimony. We adhere to our former ruling, and consequently find no error.

VI. After the defendant's motion for new trial had been denied by the trial court, it filed a petition to vacate judgment and grant new trial on the ground of newly discovered evidence, under Rules of Civil Procedure 252 and 253. The witness Horton, whose testimony has been previously discussed, had not appeared at any of the previous trials involving these deaths. It is the contention of the defendant that his testimony was a surprise, and they were not able to locate during the course of the trial the bartender with whom Horton claimed to have talked when he examined the electrical system in 1952. It is asserted he had been found at the time of the filing of the petition to vacate, and that he would deny much of Horton's testimony.

The trial court overruled the petition. It had a considerable discretion in this. Westergard v. Des Moines Railway Co., 243 Iowa 495, 499, 52 N.W.2d 39, 42. We have already indicated our belief that Horton's testimony was not material as to the defendant Ceretti. As to the defendant Fort Des Moines Community Services, Inc., we think the trial court was well within its discretion in refusing to vacate and grant a new trial. As we said in the Westergard case, supra: "Motions for new trials based upon newly discovered evidence are not favored in the law, and should be closely scrutinized and granted sparingly." Loc. cit. 243 Iowa 499, 52 N.W.2d 42. We find no error in the denial of the petition to vacate and for new trial.

VII. Defendant's three remaining assigned errors are

closely related and will be considered together. They are: that its motion for new trial should have been granted because the evidence was insufficient to justify the damages awarded; because the verdict of the jury does not effectuate substantial justice between the parties; and because the damages are excessive and were influenced by the passion and prejudice of the jury. All raise the question of the amount of the damages. The contention requires a consideration of the evidence. Rose Marie Tedrow, the decedent, was twelve years of age at the time of her death. The tragedy occurred on her birthday. Her father testified that she was an obedient child. She would help her mother with the housework. "I wouldn't say she was overly ambitious but she did do her work." Her teacher testified that she was in the sixth grade in school. Her grades were average in all subjects except English and geography, in which she was above average. The record shows that her life expectancy according to the Commissioners' Standard Mortality Table was 53.68 years.

This is the total of the evidence bearing on damages. The defendant strongly urges it is totally insufficient to support the verdict rendered, and in fact the amount awarded is so grossly excessive that it must be held substantial justice between the parties was not effectuated, and passion and prejudice appear as a matter of law.

 The question is a difficult one. No amount of money can compensate for a life wrongfully taken. Nor can any sum or any device known to man restore it. The law, faced with this absolute fact, can only say that in a proper case an award may be made which will compensate for the financial loss. The rule is that the measure of recovery for a wrongful death is the reasonable present value of the decedent's life to his estate; which means the present worth of the estate he would reasonably be expected to accumulate between the time of his death and the end of his natural life if he had lived. Soreïde v. Vilas & Co., 247 Iowa 1139, 1153, 78 N.W.2d 41, 49. In Anderson v. Strack, 236 Iowa 1, 8, 17 N.W.2d 719, 722, we said: "Generally speaking, the measure of recovery by the estate of a decedent for damages for his wrongful death is the present worth or value of the estate which decedent would reasonably be expected to have

saved or accumulated if he had lived out the natural term of his life." We quoted this with approval in Wiese v. Hoffman, 249 Iowa 416, 428, 86 N.W.2d 861, 868. We have stated and applied the rule in many other cases, and it is so well established that we must follow it here.

■ ■ But whether the award made is just to all parties is another question. Ordinarily the question of the amount of damages in this type of case is strictly for the jury. There is no rule of thumb by which the amount may be measured. On the other hand, it must be such sum as can reasonably be justified by the evidence in the case. As we said in Wiese v. Hoffman, supra, loc. cit. 249 Iowa 425, 86 N.W.2d 867: "The available factors are not numerous: life expectancy; health of the child; intelligence; alertness, general characteristics; progress in school; expressed plans for the future, and extra curricular activities." The record before us is barren of some of these indicia; it is quite meager in its showing. Of course there is not a great deal that can be shown in regard to the future earning and accumulating capacities of a twelve-year-old girl. Yet for that reason alone her estate is not to be denied a recovery in damages. On the other hand, it is incumbent upon the courts to see that they are kept within the bounds of reasonable support in the evidence. Courts have not only the right but the duty to disturb verdicts which appear unconscionable or clearly not warranted by the record. Soreide v. Vilas & Co., supra, loc. cit. 247 Iowa 1153, 78 N.W.2d 49, and see the general discussion there; also Feldhahn v. Van Deventer, 253 Iowa 1194, 1197, 115 N.W.2d 862, 864.

We find nothing in the record before us which in any manner supports the conclusion that the jury was swayed by passion and prejudice so that the verdict must be set aside for that reason. But there is support for the conclusion that the amount is not justified by the record.

While comparison of amounts permitted or denied in other cases is by no means a conclusive rule for deciding the issue here, we do find in some other decisions a guide to the thinking of the courts on the subject of amounts. Many of the decided cases are discussed in Wiese v. Hoffman, supra, where we upheld an allowance of $10,000 for the death of a 17-year-old high school

girl. Her death occurred in 1955. In Hart v. Hinkley, 215 Iowa 915, 247 N.W. 258, involving the death of a high school boy 17 years old at the time of his death in 1931, the trial court had reduced a $15,000 verdict to $10,000. We ordered a further reduction to $7500 or a new trial. In Allen v. Des Moines Railway Co., 218 Iowa 286, 253 N.W. 143, we held a verdict for $5750 for the wrongful death of a boy about eight years and eight months of age was excessive, and ordered a remittitur to $4500, or a new trial. This death occurred in 1930. In Lenth v. Schug, 226 Iowa 1, 281 N.W. 510, 287 N.W. 596, we ordered that a verdict and judgment for the death of a ten-year-old girl be reduced from $6000 to $4500 in the same manner. The death occurred in 1936.

Many other cases are to be found in which the loss to the estate of a child whose pattern of life and earning capacity have not been established is considered. In none of them have we found approval of a verdict so large as the one in the case at bar. In Soreide v. Vilas & Co., supra, loc. cit. 247 Iowa 1153, 1154, 78 N.W.2d 50, there is a statement pertinent to the point now under consideration. After saying that a comparison of verdicts is often not a satisfactory manner of determining the validity of an award in a particular case, we said: "Nevertheless it is proper to observe that this verdict * * * appears to be nearly twice as large as any other verdict in a death case to come to this court." The same is true here, in perhaps a greater degree. We have found no case in which the amount allowed for the death of a minor of comparable age to the decedent here even approaches the amount of $22,500. Many verdicts which were only fractions of that sum have been reduced.

We realize, of course, that the dollar is not what it used to be. Its purchasing power cannot fairly be compared with its value in the decades before the second world war. Yet the verdict here is still out of line with our previous holdings. It is also pertinent to say, as we have done before, that the present considerable devaluation of the purchasing power of our money, coupled with burdensome taxes, makes the problem of saving and accumulating much more difficult. This bears directly upon the amount of the estate a decedent might have accumulated but

for his wrongful death. Hackman v. Beckwith, 245 Iowa 791, 808, 64 N.W.2d 275, 285; Soreide v. Vilas & Co., supra, loc. cit. 247 Iowa 1153, 78 N.W.2d 49, 50.

It is our conclusion that the verdict of $22,500 is clearly above what the record justifies. Unless a remittitur is filed within twenty days from the date of the filing of this opinion of all of the judgment herein above the sum of $15,000 with interest thereon and costs, a reversal will be ordered. If such remittitur is filed, the case will be affirmed.—Affirmed on condition as to defendant Fort Des Moines Community Services, Inc.; reversed with directions to dismiss the action as to defendant Ceretti.

All JUSTICES concur except MOORE, J., who takes no part.