Noel J. PAGITT, Administrator of the Estate of Randall Lee Pagitt, Deceased, Appellee,

v.

CITY OF KEOKUK, Iowa, Appellant.

Noel J. PAGITT, Administrator of the Estate of Steven Craig Pagitt, Deceased, Appellee,

v.

CITY OF KEOKUK, Iowa, Appellant.

Noel J. PAGITT, Individually and as natural parent of Randall Lee Pagitt, Deceased, Appellee,

v.

CITY OF KEOKUK, Iowa, Appellant.

Noel J. PAGITT, Individually and as natural parent of Steven Craig Pagitt, Deceased, Appellee,

v.

CITY OF KEOKUK, Iowa, Appellant.

No. 55551.

Supreme Court of Iowa.

April 25, 1973.

Norman & Younggren, Keokuk, for appellant.

Napier, Napier & Wright, Fort Madison, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and McCORMICK, JJ.

LeGRAND, Justice.

These cases involving the tragic deaths of two young boys, sons of Noel J. Pagitt and Mary Jo Pagitt, are here for the second time. An earlier interlocutory appeal settled—or so we thought—a parent's right to recover for loss of companionship and society in an action for the wrongful death of his minor children. See Wardlow v. City of Keokuk, 190 N.W.2d 439 (Iowa 1971). On the subsequent trial of the case, a jury found the city's negligence had caused Randall Lee Pagitt and Steven Craig Pagitt to be swept into a storm sewer. Death by drowning resulted. The estate of each deceased minor was awarded $20,000.00 and the father received $30,-000.00 for loss of services of each of his sons. We affirm the trial court.

Two errors are said to justify a reversal. They are: (1) the trial court erred in giving instruction 16 dealing with the measure of damages; and (2) the city is entitled to a remittitur or, in the alternative, a new trial because all four verdicts are excessive.

I. We discuss first the claim of error in giving the damage instruction. After instructing on the elements necessary to find liability, the trial court charged the jury on damages in the event they found plaintiff entitled to recover. We set out the important part of that instruction:

"The loss of services for each child includes the reasonable value of the loss of companionship and society of each child from the date of his death, July 7, 1969, until he reached his majority.

"In this connection, you are further instructed that the damages for loss of services, if any, must be diminished by the probable cost of each child's support and maintenance from the date of the death of each child until each child would have reached his majority.

"You are further instructed that in your consideration of damages for loss of services, if any you find, you are to give no consideration for grief, mental anguish or suffering to the Plaintiff by reason of the childrens' death.

"In connection with the claim of the Plaintiff for the loss of services of Randall Lee Pagitt and Steven Craig Pagitt, or one of them, if any you find, you are instructed that the services of a son in the form of companionship and society to his father cannot be measured with precision but you may take into consideration the circumstances of life of Randall Lee Pagitt and Steven Craig Pagitt, as disclosed by the testimony, including his age, health and strength, his activities in the household and community, and any other competent evidence which may have a bearing upon the claim of the Plaintiff for the loss of companionship and society, allowing therefor such amount as to you may appear to be fair and reasonable under the circumstances.

"You should add together the amounts, if any, you find Plaintiff, Noel J. Pagitt, individually and as father of Randall Lee Pagitt, is entitled to recover on each of the items claimed, and such total will be the amount of your verdict, but in no event can such recovery exceed $150,-000.00, being the amount claimed therefor.

"You should add together the amounts, if any, you find Plaintiff, Noel J. Pagitt, individually and as father of Steven Craig Pagitt, is entitled to recover on each of the items claimed, and such total will be the amount of your verdict, but in no event can such recov-

ery exceed $150,000.00, being the amount claimed therefor."

The city made the following timely objection to the instruction:

"[The last two] paragraphs instruct [the jury] repetitively and at the same time do not consider the diminution for the probable cost of child support and maintenance from the date of death to when [each child] reaches his majority, although that is set forth on the first page of the instruction. In other words, we believe if this instruction is permitted to stand you should add, to the amount, if any, you find for Noel J. Pagitt, individually and as father of Randall Lee Pagitt, is entitled to recover on each of the items claimed, and deduct the reasonable cost of maintenance and support of said child from the time of his death until the time he reaches his majority.

"That same insert should be made in the next paragraph with respect to Steven Craig Pagitt.

"We further object to [that portion] of Instruction number 16, [which is erroneous] because the age, health and strength of the child are not relevant [to a determination of damages for loss of companionship and society] nor [are] his activities in the community relevant."

The objection is twofold. The first complaint rests upon the asserted failure of the trial court to adequately instruct the jury any award for loss of services, which we said in Wardlow include companionship and society, must be diminished by the probable and reasonable cost of the support and maintenance of the children from the date of their death to the time they would have attained their majority.

The city concedes this limitation appears in the instruction but insists it is misplaced. We are told it should have been put (or repeated) at the end of the instruction, when the jury was charged on the mechan-

ics of reaching the amounts to be allowed as damages.

■ We find no merit in this objection. The instruction under attack was the only one dealing with damages for loss of services. All elements to be considered were included there. The jury was clearly told to reduce any award for loss of services by the "probable cost of each child's support and maintenance" from the date of his death to the date he would have reached his majority.

We see no possibility the jury could have failed to understand this instruction. If the jurors followed the instructions, as we assume they did, the amount for loss of services had already been reduced by the probable expense of support and maintenance *before* the items of recovery were combined to arrive at the ultimate verdict. The instruction as given is not vulnerable to this objection.

The second ground for objection asserts the trial court erred in letting the jury consider the "age, health and strength, activities in the household and community and any other competent evidence which may have a bearing upon the claim of the plaintiff for the loss of companionship and society" in arriving at the damages for loss of services.

The city's argument runs this way: While the Wardlow decision established the right of a father (or, in some circumstances, a mother) to recover for loss of society and companionship, it did not point out any guidelines as to what elements could be considered in assessing recovery for that loss. It merely recognized the general principle, leaving the issue otherwise open and unchartered. In giving instruction 16, the trial court set out its own standards, which allowed the impermissible considerations mentioned in the objection to influence the jury's verdicts. Again, we must disagree with the city.

We cannot accept the argument that the characteristics which bear relationship to companionship and society may not be considered in arriving at the value of the loss sustained. The city insists this places a premium on the loss of a "genius" and discounts the value of an ordinary child or, even worse, that of a mentally or physically handicapped one.

We believe this misconceives the nature of companionship and society. We readily agree a parent may suffer as much or more mental anguish and grief over the death of a handicapped child than over one who has no disability.

■ However, this is not a factor in the award of damages. These items are specifically excluded. Carefully following the mandate of Wardlow, the trial court told the jury it could not consider "grief, mental anguish or suffering" in assessing damages for loss of companionship and society. See Wardlow v. City of Keokuk, supra, 190 N.W.2d at 448.

It is unrealistic to say *all* children furnish the same companionship and society to *all* parents. The former is defined as an "association as companions; fellowship"; the latter as used in this context means "those with whom one has companionship". The Random House Dictionary (1966).

■ Quite obviously it is impossible to generalize on the extent to which persons —including parents and children—enjoy each other's companionship and society. This is a highly personal relationship which must of necessity be decided on a case-by-case basis. When it relates to a parent and child, it depends on all the circumstances important in the lives of a *particular* parent and a *particular* child. It takes into consideration not only the character, age, intelligence, interests and personality of the child but also those same factors as they are possessed, or not possessed, by the parent. After all, it is the parent's loss which is being appraised, and the extent to which he has been deprived of the company of his minor child depends

on the ability of the child to offer companionship and society and the ability of the parent to enjoy it.

Recovery for such deprivation went unrecognized by this court until the Wardlow decision. This is our first confrontation with the problem raised by the city's objections to instruction 16. Our previous opinions are of little help, but some from other jurisdictions support the conclusion which we reach. VanCleave v. Lynch, (1946), 109 Utah 149, 166 P.2d 244, 249; Lewis v. State of Louisiana, (La. App.1965), 176 So.2d 718, 730; Westfall v. Venton, (Mich.App.1965), 1 Mich.App. 612, 137 N.W.2d 757, 761; Silverman v. Travelers Insurance Company, (Fifth Cir. 1960) 277 F.2d 257, 261; Clark v. Icicle Irrigation District, (1967), 72 Wash.2d 201, 432 P.2d 541, 544.

We have frequently criticized the abstract statement of legal principles in instructions without affording the jury the assistance necessary to properly apply them to the facts in the particular case before it. Gibbs v. Wilmeth, 261 Iowa 1015, 1022, 157 N.W.2d 93, 97 (1968) and citations. By including those factors to which objection is now made (all of which had evidentiary support), the trial court correctly sought to avoid this pitfall. We believe all these elements had a true bearing on loss of companionship and society.

We do not mean to limit instructions in future cases to those same circumstances. Other facts shown by the evidence might well be made part of such an instruction in a given case. Our holding that the instruction presents no reversible error is necessarily limited to the record now before us.

II. The remaining assignment of error deals with damages. The city claims they are excessive and asks either a remittitur or a new trial.

Two problems are presented—the verdicts for the two estates and the verdicts for the father individually. We treat them separately.

■ III. Each estate was allowed recovery in the amount of $20,000.00. The measure of damages for a decedent's estate is, of course, well settled and was correctly presented as the "present worth or value of the estate which [decedent] would reasonably be expected to have saved and accumulated as a result of [his] own efforts from the date of [his] majority if [he] had lived out the term of [his] natural life."

■■ This assignment raises again the much disputed question as to when we should interfere with an award of damages. The assessment of damages is traditionally a jury function. Its decision should be disturbed only for the most compelling reasons. We have said many times we will reduce or set aside a verdict only if it is (1) flagrantly excessive or inadequate; or (2) so out of reason as to shock the conscience of sense of justice; or (3) raises a presumption it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidential support. Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 659 (Iowa 1969); Henneman v. McCalla, 260 Iowa 60, 80, 148 N.W.2d 447, 459 (1967).

As we understand the city's argument, it claims the verdicts should be reduced or set aside on the last of these grounds—lack of substantial support in the record. Indeed, this is the only basis upon which the city could seriously argue its point as we find no evidence the verdicts were influenced by passion, prejudice or other ulterior motive. With this in mind, we briefly summarize the evidence bearing on this question:

The two boys—Randy and Steven—were nine and eight years old respectively at the time of their fatal misadventure. They were described as "normal" boys. They were average in school achievement; both were interested in sports and outdoor activities.

Randy was already a collector—stamps, coins, antiques. He shopped antique stores, both in the company of his mother and alone, and had developed a great curiosity about anything old. He had acquired a few antiques of his own, which his father valued at about $200.00. They had been purchased with his own money, some of which he had earned and some of which he had saved from his allowance.

Steven was interested in music, and art. Actually, both boys showed some bent towards these subjects, but Steven apparently had more talent than Randy along these lines. Steven was described by his father as "wanting to do great things. He didn't want to be ordinary."

Both boys had shown interest in earning money. They wanted to do small tasks which would give them some compensation. Each was looking forward to working his own paper route.

The parents testified about their hopes and expectations for their sons. These included a college education if the boys wanted one, something the parents agreed should be "up to them".

Admittedly this evidence is little upon which to project a prediction as to what financial success Randy and Steven would have in the 60 years remaining on their life expectancy, but it must be borne in mind we are dealing with two youngsters who had not yet established a pattern of conduct from which reliable estimates of their industry, thrift and earning potential could be made. The law does not expect the impossible under these circumstances. In Tedrow v. Fort Des Moines Community Services, Inc., 254 Iowa 193, 202, 117 N.W. 2d, 62, 67 (1962), we had this to say: "Of course there is not a great deal that can be shown in regard to the future earning and accumulating capacities of a twelve year old girl. Yet, for that reason alone, her estate is not to be denied a recovery in damages."

In Wiese v. Hoffman, 249 Iowa 416, 425, 426, 86 N.W.2d 861, 867 (1957), which is cited in the Tedrow opinion, we commented on the same subject this way:

"Appellants contend vigorously that since decedent was a seventeen year old girl, still in school, there is no damage to her estate. * * * Assuming negligence, and death therefrom, we are confronted with the question of considering allowance to the estate of a teenage high school student. Can we properly say that under such circumstances there is no basis for a substantial verdict? Considering all available factors, the answer rests in the good judgment of a jury, assuming no passion and prejudice, and finally subject to consideration by the court as to amount. The available factors are not numerous: life expectancy; health of the child; intelligence; alertness; general characteristics; progress in school; expressed plans for the future, and extracurricular activities.

"* * *

"* * *

"* * *

"* * *

"The evidence presented by plaintiff in this case with reference to [the decedent] was the best available in view of her age and the fact that she was still a school girl * * *."

What was said in Tedrow and Wiese is particularly applicable here where the children involved are even younger than in those two cases. It is true the evidence is sketchy and leaves much to unforeseen developments during the long period remaining to these two boys had they been permitted to live out their expectancy. But that is inevitable in cases where young children meet an early death. Within reasonable limits, this uncertainty as to amount should be resolved against the wrongdoer, not his victim.

After saying, as we frequently have, that verdict comparisons are meaningless in cases of this kind, we nevertheless almost always make them. We have again reviewed many of our previous cases dealing with damages awarded for the wrongful death of young children. Many of them are collected and discussed in Wiese v. Hoffman, supra. Since that decision, we have had occasion to consider such damages on several additional occasions. Tedrow v. Fort Des Moines Community Services, Inc., supra, where we reduced a verdict from $22,500.00 to $15,000.00 for the death of a 12-year-old girl; Hurtig v. Bjork, 258 Iowa 155, 138 N.W.2d 62 (1965), where a $28,000.00 verdict for the death of a 6-year-old girl was remitted to $12,000.00; and Giarratano v. The Weitz Co., Inc., 259 Iowa 1292, 147 N.W.2d 824 (1967), where a $75,000.00 award to a 17-year-old boy's estate was reduced to $50,000.00.

Although the last three cases cited as well as some of those mentioned in Wiese v. Hoffman, present fact situations in which we felt remittiturs were necessary, they do not require a similar result here. We cite them only to show we have always allowed substantial recovery for the death of a young and immature person, despite the inability to show completely satisfactory estimates of financial loss to the estate. The amount of such loss is dependent upon the peculiar facts and circumstances of each case. This is the area in which comparison of verdicts if held to be fruitless. Hurtig v. Bjork, supra, 258 Iowa at page 162, 138 N.W.2d at page 67; Tedrow v. Fort Des Moines Community Services, Inc., supra, 254 Iowa at page 202, 117 N.W.2d at page 67.

It is urged upon us that we have never allowed a verdict as large as this in a case involving the death of a person as young as these decedents. In the first place, even if true, this is not particularly persuasive; secondly, it is doubtful if a $20,000.00 verdict now is substantially larger in purchasing power than the $15,000.00 award in the Tedrow case decided in 1962 or the $12,000.00 judgment in Hurtig in 1965. Similar comments might be made with reference to some of the judgments in our other cases.

In both Tedrow and Hurtig—and in other decisions as well—we recognized the declining value of the dollar as a factor in passing on the reasonableness of jury verdicts. We need not belabor the point that this trend has not, to say the least, reversed itself since then.

 It is indeed true, as the city says, that a $20,000.00 verdict for the estate of a nine-year-old boy and a similar award for the estate of one eight years old assumes each of these youngsters would have accumulated a sizeable estate if he had been permitted the opportunity to do so. Should we step in and say they could not have done so? We think not.

Both Randy and Steven had exhibited characteristics and traits which would have made it possible for them to follow successfully a business, trade or profession of their own choosing. They would have had the opportunity to secure an education to prepare them for a career. They had already shown limited talent in a number of areas which, if properly developed, would have been invaluable in attaining some fair measure of financial success. We know they would have matured in a society where substantial earnings and savings are not uncommon and in an economy in which the value of the dollar continues to decline.

We hold the jury awards to the administrator are supported by sufficient evidence and that they should stand.

On excessive verdicts generally, see Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 659 and citations (Iowa 1969); Mazur v. Grantham, 255 Iowa 1292, 1303, 125 N.W.2d 807, 812 (1964); Ferris v.

Riley, 251 Iowa 400, 411, 414, 101 N.W. 2d 176, 183 (1960); Elings v. Ted McGrevey, Inc., 243 Iowa 815, 820–822, 53 N. W.2d 882, 885 (1952); De Toskey v. Ruan Transport Corporation, 241 Iowa 45, 48, 40 N.W.2d 4, 6 (1949).

■ Much of what we have already said applies also to the verdicts for the father individually. In dealing with claims for loss of services, particularly since deprivation of companionship and society may now be compensated for, we are faced with matters for which there is no fixed or calculable standard. We must necessarily leave much to the good judgment of the jury. Here, plaintiff was deprived of the services of two young sons who gave every promise of giving him in the future, as they had in the past, a great measure of companionship and society along with other services. The evidence shows the boys and their father did, in fact, enjoy a camaraderie which should have developed and strengthened in the remaining years until they reached their majority. The award is substantial; so was the loss. These verdicts, too, should stand.

Since we find no merit in the assigned errors relied on by the city, the judgments are affirmed.

Affirmed.

MOORE, C. J., and MASON, LeGRAND and McCORMICK, JJ., concur.

UHLENHOPP, J., concurs specially.

UHLENHOPP, Justice (concurring).

I adhere to the views I expressed in my dissenting opinion in Wardlow v. City of Keokuk, 190 N.W.2d 439 (Iowa). The court's opinion in that case, however, is the law, and I therefore concur in the court's present opinion.